**BANK OF TEXAS, Plaintiff-Appellant,**

v.

**COMMERCE SOUTHWEST, INC. et al., Defendants-Appellees.**

No. 83–1388.

United States Court of Appeals, Fifth Circuit.

Sept. 17, 1984.

2. Federal Rules of Appellate Procedure and Local Rule 35.

Locke, Purnell, Boren, Laney & Neely, John McElhaney, William B. Steele, III, Dallas, Tex., for plaintiff-appellant.

Akin, Gump, Strauss, Hauer & Feld, John L. Hauer, L. Kim Jamison, Kenneth R. Glaser, Dallas, Tex., Tony G. Powers, Miami, Fla., for defendants-appellees.

Before RANDALL, TATE and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Plaintiff, Bank of Texas, obtained a favorable jury verdict in an action against Commerce Southwest, Inc. and its subsidiary banks in Dallas County for service mark infringement and unfair competition. The district court, however, granted judgment notwithstanding the verdict in favor of Commerce Southwest, Inc. on the ground that the jury verdict finding a secondary meaning in the name "Bank of Texas" was against the clear weight of the evidence. We affirm.

Bank of Texas is a neighborhood bank in northeast Dallas. It has operated under the name "Bank of Texas" since 1973. In 1981, Commerce Southwest, Inc. ("CSI"), a bank holding company, decided to rename its member banks so that customers would be able to tell that the banks were members of that bank group. After a marketing study CSI decided to use the root designation "BancTEXAS" coupled with a geographic designation to identify its member banks as BancTEXAS Dallas, N.A. (National Association), BancTEXAS Richardson, N.A., etc. The day after CSI announced its proposed name change, Bank of Texas wrote to CSI and objected to the proposed change. A few days after that, Bank of Texas filed suit in district court against CSI and the individual member banks for violation of the Lanham Act, 15 U.S.C. § 1125(a), and the Texas common law of unfair competition.

The court ruled before trial that former Section 30 of the National Banking Act, 12 U.S.C. § 30 (since amended), preempted both the Texas common law of unfair competition and § 43(a) of the Lanham Act as far as determining the similarity of the three federally chartered defendant banks' complete formal names to plaintiff's name. Section 30 gave the Comptroller of the Currency the task of approving the names of national banks. The Comptroller could consider, among other things, the likelihood of a new name being confused with present bank names. Because of the trial court's ruling, the jury considered only CSI's use of "BancTEXAS," rather than its use of the individual names such as "BancTEXAS Richardson, N.A." The jury found that the name "Bank of Texas" had acquired a secondary meaning within all of Dallas County, which is the trade area it claimed. The jury further found that the name "BancTEXAS" would be likely to confuse the ordinary consumer as to the source of banking services. The trial judge granted judgment for CSI notwithstanding the verdict, or in the alternative a new trial, should this Court hold that judgment n.o.v. was inappropriate.

On appeal Bank of Texas claims that there was sufficient evidence to support the jury's finding that the trade name "Bank of Texas" had acquired a secondary meaning in all of Dallas County, and that former section 30 of the National Banking Act does not preempt the provisions of the Lanham Act and the state common law of unfair competition.

I.

The initial question in a case based on claims of unfair competition and infringement is whether the plaintiff has a protectable property right in the name it seeks to defend from use by others. Names or marks

which are inherently distinctive are regarded as capable of functioning immediately upon use as a symbol of origin ... [and] are given legal protection immediately upon adoption and use .... However, if a given symbol or word is *not* inherently distinctive, it can be registered or protected as a mark only upon proof that *it has become distinctive.* This acquisition of distinctiveness is referred to as "secondary meaning."

1 J. McCarthy, Trademarks and Unfair Competition § 15.1(a) (1973) (emphasis in original). A name such as Bank of Texas is not inherently distinctive, in that it combines the generic term "bank" with the geographical term "Texas." Rather, the name is descriptive of the type of services offered and the place from which such services originate. However,

> [r]egardless of whether a word or words adopted and used as a trademark or trade name could be characterized as geographical in nature, where such words have acquired a "secondary meaning," the courts will afford equitable protection to the party whose use of the word has created secondary meaning .... It deserves protection when, because of association with a particular product or firm over a period of time, the word has in the mind of the public come to stand as a name or identification for that product or firm .... Protection is warranted on what it has come to signify regardless of any original weakness, actual or supposed. (Citations omitted).

*Continental Motors Corp. v. Continental Aviation Corp.,* 375 F.2d 857, 861 (5th Cir.1967). In order to establish secondary meaning for a term, a plaintiff must show that the primary significance of the term in the mind of the consuming public is not the product but the producer. *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938). Because the name Bank of Texas is descriptive, not inherently distinctive, "the evidentiary burden necessary to establish secondary meaning ... is substantial." *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.,* 698 F.2d 786, 794 (5th Cir.1983); *see also Vision Center v. Opticks, Inc.,* 596 F.2d 111, 118 (5th Cir.1979), *cert. denied,* 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980). In determining whether a name has acquired secondary meaning, it is proper to consider the length and manner of use of the name, the nature and extent of advertising and promotion of the name, *Volkswagenwerk Aktiengesellschaft v. Rickard,* 492 F.2d 474, 478 (5th Cir.1974), survey evidence, *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.,* 698 F.2d 786, 795 (5th Cir.1983), the volume of sales, and instances of actual confusion, *American Scientific Chemical, Inc. v. American Hospital Supply Corp.,* 690 F.2d 791, 793 (9th Cir.1982).

Appellant argues that the testimony of expert witnesses, the results of a consumer opinion poll, evidence of advertising, growth of bank assets, length of time of Bank of Texas's exclusive use of that name, and instances of actual confusion provided substantial evidence proving that the name "Bank of Texas" had acquired a secondary meaning throughout Dallas County so that ordinary consumers associated it with particular banking services. CSI argues the direct opposite: it urges a lack of evidence to show a secondary meaning throughout Dallas County, criticizes the methodology of the consumer poll, claims the number of instances of actual confusion were inflated, and stresses the difficulty of establishing secondary meaning for a geographical designation. CSI also argues that the monogram BancTEX-AS is sufficiently visually different from "Bank of Texas" to prevent confusion.

■ The standard for review of judgment n.o.v. is established in *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc), in which we stated:

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences

point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.

After carefully reviewing the entire record, we conclude that the trial judge was correct, and that a reasonable jury could not find that Bank of Texas had established a secondary meaning to its name throughout Dallas County, the area in which it sought to preclude others from using that name.

We do not feel it necessary to recount and appraise the evidence at great length. The district court did this admirably for the benefit of the parties. We do, however, respond to several of appellant's concerns. Appellant believes that the district court improperly focused on the amount of money Bank of Texas spent on advertising as compared to CSI's expenditures, and overlooked Bank of Texas's extensive word-of-mouth promotion. We recognize that it is not the amount of money spent on advertising that is important, but the results achieved with the money spent. *Aloe Creme Laboratories, Inc. v. Milsan, Inc.*, 423 F.2d 845, 850 (5th Cir.), *cert. denied*, 398 U.S. 928, 90 S.Ct. 1818, 26 L.Ed.2d 90 (1970). Of course Bank of Texas engaged in promotion of its name. We are not convinced, however, that the evidence shows its promotion successfully imparted a secondary meaning to its name in the whole of Dallas County.

Appellant also points to the nine years it exclusively used the name "Bank of Texas" in Dallas County to show that the name acquired secondary meaning. It cites cases such as *Hair v. McGuire*, 188 Cal.App.2d 348, 10 Cal.Rptr. 414 (1961), in which three years of continuous use of a name was sufficient to uphold a finding of secondary meaning in a name. We do not quarrel

with the results of the cases appellant cites; we simply distinguish them. Although one party may have been successful in imbuing a name with secondary meaning in three short years, that does not mean that length of time alone is sufficient to establish secondary meaning. Other evidence must be considered to determine if a secondary meaning was acquired during a particular time span. Our review of the evidence does not indicate that "Bank of Texas," the name of this outlying neighborhood bank, acquired a secondary meaning throughout Dallas County, even though it was used for nine years.

Appellant points to instances of actual confusion in which, for example, wire transfers intended for BancTEXAS were sent to Bank of Texas, and customers came into Bank of Texas believing they were in a BancTEXAS member bank. We note that most of the instances of confusion were on the part of the personnel of other banks who were responsible for sending wire transfers. They occurred during the time period immediately after CSI adopted the group name "BancTEXAS" and before people had had time to assimilate the change of name. In fact, there was some question as to whether the new name had yet been listed in bank directories used for wire transfers under "B" instead of in parentheses following the former bank names under different alphabetical listings. Thus a person looking for the address of BancTEXAS Dallas under "B" would have found Bank of Texas, but not BancTEXAS. To find BancTEXAS Dallas, N.A. one would have had to look under the bank's former name to find "National Bank of Commerce Dallas (new name to become effective later "BancTEXAS Dallas")".

There was little evidence of actual *consumer* confusion. Although appellant argued that, if professional bankers were confused, consumers were probably even more confused, confusion is not enough to show that "Bank of Texas" had a secondary meaning. While appellant seeks to interpret the confusion as showing that Bank of Texas was such a well known name that

customers automatically turned to it even though they were really seeking BancTEX-AS, or were confused because they had previously associated that name only with appellant, the evidence is at least as open to the interpretation that customers were seeking the BancTEXAS they had seen advertised, and came to Bank of Texas only because they carelessly confused the name. It is clear there was some confusion at first; evidence of that confusion, however, does not automatically establish that Bank of Texas had established a secondary meaning in all of Dallas County.

Finally, appellant points to evidence of goodwill attributed to its name, the growth in its assets and deposits in recent years, and a survey showing a 58.7% rate of name recognition among the survey population, as evidence that "Bank of Texas" had acquired a secondary meaning. We find the same weakness in all the proffered evidence: it does not show that the name Bank of Texas had acquired a secondary meaning in all of Dallas County. Since appellant sought to enjoin the use of the name BancTEXAS in all of Dallas County, which is the area appellant claimed as its trade area, it had the corresponding burden of proving that it had a protectable interest in that name in the entire area. While Bank of Texas undoubtedly did have some goodwill associated with its name, and had in fact increased its assets and deposits, Bank of Texas did not meet its burden of showing that the goodwill and assets and deposits showed secondary meaning for an area other than that immediately surrounding the "neighborhood" bank.[1]

Although a telephone survey of people who had telephone numbers included in exchanges surrounding Bank of Texas indicated that 58.7% of the people questioned said they had heard of Bank of Texas, we find several factors, of which we list two,

which substantially negate the apparent significance of that figure. First, the study asked interviewees who said they recognized the name "Bank of Texas" where it was located. Most of the interviewees could not identify where the bank was located, or incorrectly named the location of some other bank such as Texas Commerce Bank.[2] Only 11% of the survey population correctly identified its location. We do not imply that knowledge of location is a prerequisite to identifying a service with a name, since it is possible, for instance, to know of the excellent care provided by a particular nursing home without knowing the nursing home's exact location. Knowledge of location is, however, helpful in determining whether an interviewee does in fact correctly associate a name with a service.

A more critical factor in evaluating the possible weight which could be given to the survey is the survey designer's admission that the results of the survey can not be assumed to be representative of all of Dallas County. The survey population was taken from an area surrounding Bank of Texas, and comprising only a portion of the City of Dallas. That area was assumed by the survey designer to be Bank of Texas's trade area. For purposes of this lawsuit Bank of Texas had the burden of proving that its name had acquired a secondary meaning in the entire county. After a thorough consideration of the entire record, giving all the evidence its due weight, we agree with the district court that Bank of Texas did not meet its burden of presenting sufficient proof to support the verdict of the jury.

## II.

■ Bank of Texas also argues on appeal that former section 30 of the National

---

1. We do not mean to suggest that Bank of Texas did or did not have a secondary meaning in its name established in its immediate locale; we simply contrast the adjoining neighborhood with the larger area of Dallas County.

2. One hundred and seventy-six people, 58.7% of the survey population, said they had heard of

Bank of Texas. Of those 176, thirty-three correctly named the bank's location. Six people named the thoroughfare it is on but no cross street to indicate if they were thinking of the correct intersection or area, ten people said the bank was in "north/northeast Dallas," and thirty-four said they did not know where it was.

Banking Act, 12 U.S.C. § 30, does not preempt Texas common law of unfair competition and the Lanham Act, 15 U.S.C. § 1125 *et seq.*, and that it should therefore have been allowed to try its case against the three national bank defendants' full corporate titles. We find it unnecessary to address this issue, since, even if there were no preemption, Bank of Texas would be required under the Lanham Act and Texas common law to show that it had a protectable interest in its name. In *Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Association*, 651 F.2d 311, 314-15 (5th Cir.1981), an action alleging violation of the Lanham Act, and unfair competition, the Court held that before it could be determined whether there was a likelihood of confusion between service marks the "strength" of the critical mark had to be determined. The Court then noted that descriptive marks are protected only after secondary meaning has been shown. Because "Bank of Texas" is a descriptive name, appellant would have had to show secondary meaning before it could show a violation of the Lanham Act or the common law. Bank of Texas failed to show secondary meaning in the entire market area claimed. Since Bank of Texas failed to establish secondary meaning throughout the area it claimed as its trade area, Dallas County, the question of whether there is preemption is moot.

On this record, we must affirm in its entirety the judgment notwithstanding the verdict granted by the district court.

AFFIRMED.