The KINGSFORD PRODUCTS
COMPANY, a Delaware
Corporation, Plaintiff,

v.

KINGSFORDS, INC., a Kansas corporation, Stephen Kingsford, Marianne Kingsford, Defendants.

Civ. A. No. 86–2447–S.

United States District Court,
D. Kansas.

April 26, 1989.

**1014**

Stephen M. Westbrook, of counsel, The Clorox Co., Oakland, Cal., Bruce Keplinger, Payne & Jones, Chtd., Overland Park, Kan., for plaintiff.

John Anderson, Jr., Overland Park, Kan., for defendants.

Stephen T. Kingsford, Kingsfords, Inc., pro se.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

A trial was held to the court on this trademark infringement case on January 4th and 5th, 1989. After thoroughly reviewing the evidence presented to the court, and the parties' pre- and post-trial written submissions, the court is now prepared to rule.

## FINDINGS OF FACT

### A. *The Parties*

1. Plaintiff, The Kingsford Products Company, manufactures and distributes a number of retail products sold to consumers through retail stores. These products include charcoal briquettes, wood chips, and lighter fluid. In 1986, plaintiff acquired K.C. Masterpiece Products, Inc., and has been marketing its line of barbecue sauce.

2. Since 1951, plaintiff has sold and distributed throughout Kansas and the United States charcoal briquette products. The charcoal briquettes are sold in bags bearing the trademark "Kingsford" and plaintiff's logo, which are prominently displayed on the bags. Also, plaintiff's tradename, "THE KINGSFORD PRODUCTS COMPANY" also appears on the bags.

3. Defendant, Kingsfords, Inc., is a corporation formed in June of 1986 by the individual defendants Stephen T. Kingsford and Marianne Kingsford. The individual defendants are husband and wife and live in De Soto, Kansas. Since July 10, 1986, the corporate defendant has manufactured and distributed barbecue sauce in the Kansas City metropolitan area and outlying counties. Defendants' barbecue sauce is sold under the label of "Original K Barbecue Sauce." The label on defendants' barbecue sauce bears the tradename of KINGSFORDS, INC. Also, some labels bear the name "Stephen T. Kingsford, Inc."

4. Plaintiff brought this suit on October 9, 1986, seeking an injunction and damages against defendants. Plaintiff requests that defendants be enjoined from using the "Kingsford" name in any way with regard to defendants' barbecue sauce product. Plaintiff contends that it has a protected trademark in the use of the name "Kingsford" on barbecue sauce and barbecuing in general. Plaintiff also contends that its mark is entitled to protection in barbecue sauce because barbecue sauce is a related product to the products in which plaintiff has protected marks. Plaintiff contends that defendants' use of the Kingsford mark creates confusion regarding the source of defendants' product.

Defendants argue that plaintiff has not shown a secondary meaning of the surname "Kingsford" in barbecue sauce, and thus is not entitled to trademark protection. Defendants also contend that barbecue sauce is not a product related to the products marketed by plaintiff at the time defendants began marketing their barbecue sauce.

### B. *The Barbecue Sauce Saga*

5. In August of 1982, plaintiff developed and sold a barbecue sauce product

identified as "Ranch House" barbecue sauce mix. The Kingsford mark was used on this product. The product was a powdered barbecue sauce mix, unlike bottled barbecue sauce. On September 29, 1982, plaintiff filed a trademark application for the trademark Kingsford for use on the barbecue sauce product. CPC International, the manufacture of "Kingsford Cornstarch," opposed plaintiff's use of the Kingsford mark on the barbecue sauce mix. The dispute between CPC and plaintiff was finally resolved, and on January 6, 1987, the trademark was issued to plaintiff. In the summer of 1983, a laboratory test market was conducted regarding this barbecue sauce mix. In the summer of 1984, mini-market tests were conducted in Evansville, Indiana. The results of these tests indicated that the barbecue sauce mix product was a failure. From October, 1984 until plaintiff acquired K.C. Masterpiece, plaintiff did not attempt to market barbecue sauce.

6. Defendant Stephen T. Kingsford has been involved in sales during most of his adult life. He currently works as a carpenter, in addition to working in the barbecue sauce business. Defendant Marianne Kingsford received a college education in marketing. In 1985, they formed AS & K, Inc. The purpose of this corporation was to develop a line of cleaning materials. This goal, however, never materialized.

In March of 1986, the individual defendants began researching the idea of developing and marketing barbecue sauce. For years, the individual defendants had been developing a home recipe for barbecue sauce. They contacted CPC International about the use of the name Kingsford. CPC International had a trademark on the name for its use in the food product of cornstarch. The individual defendants also made an inquiry to the government's trademark office. This inquiry informed defendants of plaintiff's application for trademark registration for barbecue sauce in August of 1982, but also noted the opposition of CPC to this use. At that time, plaintiff had not received a registered trademark for barbecue sauce.

On June 6, 1986, defendants changed the name of AS & K, Inc. to Kingsfords, Inc. Defendants decided to market barbecue sauce under the Kingsford name solely because of their pride in the family name. Defendant Stephen T. Kingsford is the only living male Kingsford who is a direct descendant of the founder of the Kingsford cornstarch company, which is now a product owned by CPC International. Defendant's ancestor was the first president of CPC. Defendants never intended to trade off of plaintiff's good name in the charcoal briquette business. Since July 10, 1986, defendant Kingsfords, Inc. has been marketing its Original K Barbecue Sauce in the Kansas City metropolitan area and surrounding counties.

7. On July 25, 1986, plaintiff concluded an agreement for the acquisition of the assets of K.C. Masterpiece Products, Inc., including K.C. Masterpiece Barbecue Sauce. In September of 1986, plaintiff started placing its housemark, "THE KINGSFORD PRODUCTS COMPANY, Oakland CA." on the labels of K.C. Masterpiece Barbecue Sauce. In all other regards, the K.C. Masterpiece label remained unaltered. The Kingsford mark on the K.C. Masterpiece Barbecue Sauce bottle is not prominent and is on the back side of the bottle.

8. Plaintiff has spent a large amount of money advertising the Kingsford name. Plaintiff has established a major share of the charcoal briquette market and enjoys a high consumer awareness regarding charcoal briquettes. Since the acquisition of K.C. Masterpiece Barbecue Sauce, plaintiff has engaged in some marketing endeavors that have linked other Kingsford products, such as charcoal briquettes and lighter fluid, with K.C. Masterpiece Barbecue Sauce. These endeavors have mostly involved coupon insert sections of Sunday newspapers. Except for these group display advertising endeavors, there has been no use of the Kingsford name in the advertising of K.C. Masterpiece barbecue sauce.

9. Defendants have marketed and promoted their Original K Barbecue Sauce. They have made frequent use of the Kings-

ford name with regard to their barbecue sauce in advertising. The housemark "KINGSFORDS, INC., DeSoto, Ks. USA." appears on the back label of their product.

10. On October 9, 1986, plaintiff instituted the present lawsuit to enjoin defendants' further use of the Kingsford mark on their barbecue sauce.

11. In May of 1988, plaintiff began marketing, in test mini-markets, a barbecue sauce bearing the Kingsford name. This sauce prominently used the Kingsford name and plaintiff's logo on the front label. The results of this test marketing did not meet plaintiff's expectations and the product is not now marketed anywhere.

### C. *Secondary Meaning*

■ 12. After considering all of the evidence, the court finds, as fact, that plaintiff has failed to show that the "Kingsford" mark has a secondary meaning regarding barbecue sauce, or barbecuing in general. Whether plaintiff has acquired a secondary meaning of the Kingsford mark regarding charcoal briquettes is a different issue and one not before the court at this time.

13. Evidence has been presented that the Kingsford name is used on a variety of products, including cornstarch, glassware, and in the packaging of meat products.

14. Plaintiff's use of the Kingsford mark on the K.C. Masterpiece Barbecue Sauce is not prominent. Its use on this product does not create an identity of "Kingsford" with barbecue sauce. Plaintiff simply uses the Kingsford housemark on this product, indicating the manufacturer of the product. Moreover, this use of the mark did not occur until after defendants were marketing their barbecue sauce.

15. "Kingsford" has great name recognition regarding charcoal briquettes. The court finds that plaintiff has failed to bridge the gap between charcoal and barbecue sauce in regard to the Kingsford name to create a secondary meaning in that name for barbecue sauce. Plaintiff undoubtedly wants to and appears to have future plans to market a barbecue sauce bearing the Kingsford name, not just as a housemark.

But to date, plaintiff has not established a secondary meaning for the mark in barbecue sauce.

### D. *Likelihood of Consumer Confusion*

■ 16. The court finds that there has not been sufficient evidence to indicate confusion among consumers. The testimony of private investigator Donald L. Hochanadel provides no evidence of consumer confusion regarding the Kingsford name and how it relates to barbecue sauce. The court also finds that the testimony of James Flynn does not indicate confusion among consumers of barbecue sauce. Also, the testimony of Allen McKeever, owner of two Price Chopper grocery stores in Johnson County, Kansas, testified that he had received no inquiries about the source of Original K Barbecue Sauce and had no personal knowledge of any consumer confusion regarding Original K Barbecue Sauce and the Kingsford name.

17. The court does not give much weight to the findings of the Guidelines' Research Survey conducted at plaintiff's request. The survey was conducted in November of 1987 for the purpose of litigation. The survey was conducted in a limited geographical area. The survey was conducted solely in shopping malls in the Kansas City Metropolitan portion of defendants' market territory. No survey was conducted among consumers in the surrounding, outlying counties, where Original K is marketed. Also, of the 1,200 people questioned, 15%, a number plaintiff contends is significant for likelihood of confusion in trademark cases, refused to participate in the survey.

18. Further evidence shows a lack of confusion among consumers. Plaintiff's Manager of Consumer Information, Sandy Sullivan, testified that the company received only two inquiries regarding defendants' Original K Barbecue Sauce in over a two year time period. Also, the deposition testimony submitted to the court of two grocery store checkers states that they never received any inquiries from consumers or comments from consumers indicat-

ing confusion regarding the source of defendants' Original K Barbecue Sauce. The court finds that the evidence regarding the likelihood of consumer confusion indicates that such confusion, if any, is insignificant.

### E. *Good Faith*

19. The individual defendants acted in good faith in using their own surname on Original K Barbecue Sauce. Defendants had pride in their family name which had been associated with a successful food product in the past, Kingsford Cornstarch.

20. The court finds that defendants had no bad faith or intent to trade off of plaintiff's trademark or tradename.

### F. *Related Products Doctrine*

21. Plaintiff argues that it is entitled to trademark protection on barbecue sauce products under the related products doctrine. Plaintiff contends that defendants' barbecue sauce product is sufficiently related to plaintiff's charcoal and wood chip products to entitle plaintiff to trademark protection in barbecue sauce.

22. Applying the factors considered under the related product doctrine, *see* Conclusions of Law 12, the court finds that barbecue sauce is not sufficiently related to charcoal products to give plaintiff a protected mark in barbecue sauce.

23. Plaintiff's mark is definitely a strong mark in charcoal products. The marks used by both parties are similar. They each used the "Kingsford" name.

24. One factor considered is the proximity of the products. Charcoal briquettes are not marketed near the food product of barbecue sauce. The two products, however, are sometimes marketed together in special displays set up by retail stores.

25. Regarding the "bridging the gap" factor, the court finds that at the time defendants began marketing their barbecue sauce product, plaintiff could not show a likelihood of bridging the gap between charcoal and barbecue sauce. Plaintiff attempted to market a powder barbecue sauce mix in 1982, but abandoned this effort in 1984. The only marketing of that product was in test markets, and the mark had not been registered. Moreover, plaintiff did not use its mark on any type of barbecue sauce product until after it acquired the K.C. Masterpiece line of products in September, 1986. This nonuse for two consecutive years constitutes prima facie abandonment. *See* Section 45 of the Lanham Act, 15 U.S.C. § 1127(a).

26. Plaintiff started using its housename on barbecue sauce products after it acquired the K.C. Masterpiece products. This occurred, however, after defendants had marketed their product. Plaintiff's use of the mark is not prominent and plaintiff has made no change in the label of the established K.C. Masterpiece products.

27. There is no sufficient evidence of actual consumer confusion regarding Original K barbecue sauce's source of origin. *See* Findings of Fact 16–18.

28. Defendants acted in good faith in using the Kingsford name. *See* Findings of Fact 19–20.

29. Regarding a product like barbecue sauce, consumers are enticed predominently by price and taste. Product loyalty is subordinate to these factors. *See* Testimony of Alan McKeever.

30. After weighing all these factors, the court finds that defendants' barbecue sauce is not a product so closely related to plaintiff's charcoal products as to entitle plaintiff to enjoin defendants' use of the "Kingsford" name on barbecue sauce.

## CONCLUSIONS OF LAW

### A. *General Matters*

1. "[T]he primary object of the trademark laws is not to protect 'trademarks', but is to protect the consuming public from deception." *Chase Fed. Sav. & Loan v. Chase Manhattan Fin. Serv.*, 681 F.Supp. 771, 787 (S.D.Fla.1987) (citing *James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 276 (7th Cir.1976)).

2. "[O]wnership of a trademark does not guarantee total absence of confusion in the marketplace." *Scott Paper Co. v.*

*Scott's Liquid Gold,* 589 F.2d 1225, 1231 (3d Cir.1978).

3. Testimony of dealers or wholesalers regarding consumer recognition is given little value. It does not necessarily reflect the views of the consumer class. *See Gimix, Inc. v. JS & A Group, Inc.,* 699 F.2d 901, 907 (7th Cir.1983); *Centaur Communications v. A/S/M Communications,* 830 F.2d 1217, 1223 (2d Cir.1987).

4. The reliability of the Guideline Research consumer survey is dependent on "[t]he geographical extent and diversity of the sample." Gilson, *Trademark Protection and Practice,* § 8:11[3][6], at 8–225 (1988); *see also, Bank of Texas v. Commerce Southwest, Inc.,* 741 F.2d 785, 789 (5th Cir.1984).

### B. *Secondary Meaning*

5. In trademark law, surnames are treated like descriptive marks. A secondary meaning must be shown for trademark protection in a surname under the Lanham Act. 15 U.S.C. § 1052(e)(3), (f). *Marker Int'l v. DeBruler,* 844 F.2d 763, 764 (10th Cir.1988).

6. A family name, "even though it may not be a common name, still requires such secondary meaning before it is afforded protection as a trademark." *Buitoni Foods Corp. v. Gio Buton & C.S.P.A.,* 530 F.Supp. 949, 971 (E.D.N.Y.1981) (citing *In re Glen Raven Knitting Mills, Inc.,* 153 U.S.P.Q. 134 (TTAB 1967) (To show a protected trademark in the surname Buton, one must show a secondary meaning.); *see also Marker Int'l,* 844 F.2d at 764 (must show secondary meaning for trademark protection in the not too common surname of Marker).

7. A mark acquires a secondary meaning "[i]f because of association with a particular product or firm over a period of time [it] has come to stand in the minds of the public as a name of identification for that product or firm...." *Safeway Stores, Inc. v. Safeway Properties, Inc.,* 307 F.2d 495, 499 (2d Cir.1962), *quoted in Marker Int'l,* 844 F.2d at 764.

8. Whether a trademark has acquired a secondary meaning is a question of fact.

*Marker Int'l,* 844 F.2d at 764. The burden of proving secondary meaning is on the party asserting it. This burden is "ordinarily considered a heavy one." Gilson, *Trademark Protection and Practice,* § 2.09, at 2–72 (1988).

9. The court, in finding of fact 12, has found that the mark "Kingsford" has no secondary meaning regarding the particular product of barbecue sauce. Moreover, the court has found that "Kingsford" has no secondary meaning regarding barbecuing in general. Therefore, the court finds that plaintiff's mark of "Kingsford" is not entitled to protection from defendants' use of their own surname on a barbecue sauce product.

10. Even if plaintiff had acquired secondary meaning in the mark "Kingsford" for barbecue sauce, the court has found insufficient evidence of confusion among consumers to warrant enjoining defendants' good faith use of their surname on the Original K Barbecue Sauce product.

### C. *Related Products Doctrine*

 11. The court notes that it does not believe the related products doctrine is applicable in a case like the present one, which involves the use of a party's surname as a tradename. The Tenth Circuit Court of Appeals has indicated that the sole test for determining the protected status of a surname is the secondary meaning test. *See Marker,* 844 F.2d at 764; *see also,* McCarthy, 1 Trademarks and Unfair Competition 2d ed., § 15:1, at 656–57 (1984) (If a symbol or word is a personal name, it can be protected *only* if proved to have acquired a secondary meaning.).

Nevertheless in the present case, even if the related products doctrine was found to be applicable, plaintiff has failed to show that barbecue sauce was related to the products in which plaintiff had protected marks.

 12. When a plaintiff trademark owner attempts to assert the mark's protection in a non-competing product, plaintiff must show that the non-competing product is so related to the products in

which plaintiff has a protected mark that the protection should be extended to the non-competing but related product. The factors considered in applying the related products doctrine were set out in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.1961). Judge Friendly stated that the court should consider: the strength of plaintiff's mark; the similarity between the two marks; the proximity of the products; the likelihood that plaintiff will bridge the gap between the products; actual confusion; defendant's good faith in adopting its mark; and the sophistication of the consumers. Applying these factors to the facts in the present case, the court finds that plaintiff fails to show that it had a protected interest in the non-competing product of barbecue sauce at the time defendants started marketing their product under the "Kingsfords Inc." housename. *See* Findings of Fact 21–30.

### D. *Conclusion*

13. Finally, the court finds that plaintiff is not entitled to trademark protection merely because it hopes to some day market a barbecue sauce prominently bearing the Kingsford name and that at some time in the future it may acquire a secondary meaning regarding barbecue sauce. At the time defendants started marketing their sauce, the plaintiff's mark did not have a secondary meaning regarding barbecue sauce. Therefore, the plaintiff is not entitled to trademark protection against defendants' use of their own surname on their barbecue sauce product on the hope that it may one day in the future acquire a secondary meaning regarding barbecue sauce.

IT IS BY THE COURT THEREFORE ORDERED that the Clerk of the Court enter judgment for defendants in this case.