**B & S UNDERWRITERS, INC.**

v.

**CLARENDON NATIONAL INSURANCE COMPANY, et al.**

Civ. A. No. 93–0024.

United States District Court,
W.D. Louisiana,
Alexandria Division.

May 1, 1995.

4. As noted, plaintiff attaches her reply memorandum (R.Doc. 15) to her present motion in support of her argument.

Thomas St. Paul Keaty, Chris P. Perque, Keaty & Keaty, New Orleans, LA, William B. Owens, Crowell & Owens, Alexandria, LA, Bruce W. Foudree, Barbara J. Mulvanny, Peter K. Trzyna, Keck Mahin & Cate, Chicago, IL, Richard L. Horn, Quinton F. Seamons, Wilson & McIlvaine, Chicago, IL, for plaintiff.

Covert J. Geary, Howard E. Sinor, Jr., Jones Walker Waechter Poitevent Carrere & Denegre, New Orleans, LA, John R. Heitkamp, Jr., Jeffrey N. Costakos, Peter J. Stone, Foley & Lardner, Milwaukee, WI, George C. Gaiennie, III, Gist Methvin Hughes & Munsterman, Alexandria, LA, for defendants.

### RULING

LITTLE, District Judge.

For the following reasons, this court DENIES IN PART and GRANTS IN PART defendants' motion for summary judgment. Specifically, this court GRANTS summary judgment on the issue of trademark infringement for the defendants but DENIES summary judgment on the claims of misappropriation and copyright infringement.

### I.

Plaintiff B & S Underwriters, Inc. brings this action against Clarendon National Insurance Company and Sterling Investors Life Insurance Company seeking damages and injunctive relief for violations of federal copyright and trademark laws, the Alabama Trade Secrets Act, and the Louisiana Uni-

form Trade Secrets Act. Plaintiff alleges that the defendants infringed on plaintiff's copyrights and registered trademark in an innovative workers compensation program, and misappropriated confidential information used to develop this program.

Before this court is the defendants' motion for summary judgment made pursuant to Federal Rule of Civil Procedure 56. The defendants argue that the McCarran–Ferguson Act, coupled with the Alabama Insurance Code, preempt federal copyright laws. In addition, the defendants claim that plaintiff cannot support its trademark infringement claim. Further, as to plaintiff's trade secrets claim under the Alabama Trade Secrets Act and the Louisiana Uniform Trade Secrets Act, the defendants contend that the plaintiff cannot sustain its burden of proving misappropriation. The plaintiff opposes this motion for summary judgment.

## II.

■■■ Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-movant, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In making its determination, the court must draw all justifiable inferences in favor of the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513–14.

Since the defendants' request summary judgment on several of plaintiff's claims, each claim will be discussed separately.

### A. *Copyright Infringement Claim*

■■■ The applicability of the McCarran–Ferguson Act, 15 U.S.C.S. §§ 1011 et seq., presents an interesting question. The McCarran–Ferguson Act was enacted in response to the Supreme Court's decision in

*United States v. South Eastern Underwriters Ass'n.,* 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). In that case, the Court held that an insurance company that conducted a substantial part of its business across state lines was engaged in interstate commerce and was subject to the antitrust laws. *See also Department of Treasury v. Fabe,* 508 U.S. ——, ——, 113 S.Ct. 2202, 2207, 124 L.Ed.2d 449 (1993). Prior to *South Eastern Underwriters Ass'n.,* regulation of insurance transactions rested exclusively with the states. *SEC v. National Sec.,* 393 U.S. 453, 458, 89 S.Ct. 564, 567–68, 21 L.Ed.2d 668 (1969). In order to restore the supremacy of the states in the regulation of insurance, the McCarran–Ferguson Act provides that, "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance." 15 U.S.C.S. § 1012(b).

The defendants claim that this Act preempts federal copyright law and that Alabama law permitting the approval of insurance policies by Alabama's insurance commissioner should apply. Under this authority, the defendants state that the copying of copyrighted documents that must be filed with the state and thus, in public domain, is valid even if this action violates federal copyright laws.

To support their argument, the defendants cite an unpublished opinion from the Fourth Circuit, *Progressive Corp. v. Integon P & C Corp.,* No. 90–2230, 1991 WL 218010 (4th Cir. as amended Dec. 9, 1991). We will briefly reference the facts of that case. Progressive Corporation, an underwriter of high risk automobile insurance in Virginia, developed a unique risk rating system, which allegedly received copyright protection. Virginia law required Progressive Corporation to file with the Bureau of Insurance certain "rate and supplementary rate" information. This information, according to Virginia state law, becomes public upon filing and copies may be obtained by any person upon request. Virginia law expressly permitted copying of the filings to promote competition in the insurance industry. *Id.* at *3 (citing Va.Code s.

38.2–1900(B)). Although the Fourth Circuit found that the filed materials in this particular case were in the public domain and not copyrightable, it also addressed the issue of whether the copying of the Progressive Specialty Manual fell within the "business of insurance" such that the McCarran–Ferguson Act applied to preempt federal copyright law.

Relying on the McCarran–Ferguson Act, the Fourth Circuit stated that:

> The McCarran–Ferguson Act empowers Virginia to enact a statute requiring filing of insurance programs with the Commission and expressly permitting unlimited copying of material, pursuant to [section 1012(A) of the McCarran–Ferguson Act]. Furthermore, as required under [section 1012(B) ], the Copyright Act must relate specifically to the business of insurance. It does not. Thus, Virginia's statute controls Virginia's insurance business as directed by the Act. *Id.* at *5.

It further stated that "[t]he Act specifies that legislation which 'relates to the business of insurance' supersedes state laws." *Id.* "Consequently, insurance rate information is governed by Virginia Code s. 38.2–1900–.2–1928, permitting copying 'by any person on request and upon payment of a reasonable charge....' Va.Code s. 38.2–1907." *Id.*

Aside from this decision, this court has not found any other case law that has addressed the issue of whether federal copyright laws are preempted by the McCarran–Ferguson Act. Having considered the Fourth Circuit's decision, however, this court declines to be guided by it. The present case differs from the scenario in *Progressive*. Unlike the Virginia insurance statute, the Alabama Code does not expressly authorize the copying of the filed information. Nevertheless, this distinction is of little consequence in our holding. More importantly, this court notes that the *Progressive* decision can be criticized on a number of grounds.

In 1990, the copyright laws were amended to extend liability for infringement to "any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity." 17 U.S.C.S. 501(a), 511(a). Consequently, Congress removed state immunity under the doctrine of sovereign immunity. Bruce Foudree and Peter Trzyna, *Toward the Exclusive Right to Market Innovative Insurance Products: The Use of Intellectual Property Law in The Business of Insurance,* 41 Drake Law Review 587, 595 n. 27 (1992). "[U]nder the *Progressive* reasoning, a state insurance commissioner seemingly could be liable for copyright infringement or contributory infringement, but not the companies regulated by the commissioner. This implausible interpretation of Congressional intent ... indicates that *Progressive*'s reasoning is flawed." *Id.*

■ In addition, a statute permitting the copying of documents filed with the state does not regulate the business of insurance. *Id.* The Supreme Court has defined the phrase "for the purpose of regulating the business of insurance" as statutes aimed at protecting or regulating directly or indirectly the relationship between insurer and insured. *Fabe,* —— U.S. at ——, 113 S.Ct. at 2208 (citing *SEC v. National Sec., Inc.,* 393 U.S. 453, 460, 89 S.Ct. 564, 568–69, 21 L.Ed.2d 668 (1969)). The focus of the McCarran–Ferguson Act is upon the relationship between the insurance company and its policyholders, the type of policy which could be issued, its reliability, interpretation, and enforcement. *Id.* The statute permitting the copying of documents simply does not regulate the relationship between the insurer and the policyholder. The Fourth Circuit in *Progressive* concedes that this law was aimed at promoting competition in the insurance industry. It, however, does not promote the reliability of the insurance policy or protect the relationship between the insurer and the insured.

Similarly, in the present case, Alabama's "me-too" approval policy does not protect the relationship between the insurance company and the policyholders. Indeed, the defendants concede this fact in their brief.

> Alabama's "me-too" policy benefits both the applicant and the Insurance Commissioner's Office. The applicant avoids the delay associated with gaining approval of a new form. The Commissioner's Office, on the other hand, saves the time, expense

and extra manpower required to approve a new form. (citations to depositions omitted) Moreover, since all workers compensation policies, for example, must of necessity say essentially the same thing, it avoids the hollow formality of requiring insurance companies to create new forms which have the same legal effect as the approved forms, but which use slightly different language. For these reasons and others, me-too filings are customary in the industry. (citations to depositions omitted) Thus, while the policy of permitting duplication of filed information aids both the insurance companies and the insurance commissioner, it does not protect nor affect the policyholders.

Moreover, by applying federal copyright law, this court does not invalidate, impair, or supersede any Alabama law. Unlike the state of Virginia whose statute specifically authorizes copying, and in which the *Progressive* court relied, Alabama has not codified its "me-too" approval policy. Being hard pressed to find "a *law* ... for the purpose of regulating the business of insurance," the defendants cite Ala.Code §§ 27–14–8(a) (1994) and 27–14–9(5) (1994). Ala.Code § 27–14–8(a) states that "[n]o basic insurance policy ... shall be delivered or issued for delivery in this State, unless the form has been filed with, and approved by, the Commissioner." Ala.Code § 27–14–9(5) provides the insurance commissioner with broad powers to disapprove of forms that are contrary to the public policy of Alabama. The defendants argue that these sections, when read together, give the commissioner broad approval powers that will be invalidated if this court finds that the McCarran–Ferguson Act does not apply. This is not the case.

The insurance commissioner's ability to approve or disapprove policies in the interest of protecting the policyholder is not affected. This court simply seeks to curb the policy of duplicating filed information where it does not protect the relationship between the insured and insurer and results in violations of the federal copyright laws. The crucial point is that Alabama's "me-too" policy focuses its attention on providing the insurance company and the insurance commissioner with a convenient method of approving policies. *See SEC v. National Sec.,* 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969) (where the Court held that although the Arizona Director of Insurance was authorized by Arizona state law to approve mergers, the McCarran–Ferguson Act did not apply to preempt federal securities laws because the state's law focused its attention on stockholder protection and not the protection of insurance policyholders). This court will not allow the defendants to categorize Alabama's "me-too" policy as falling within the commissioner's authority to approve policies in order to disguise it as "for the purpose of regulating the business of insurance." Thus, this court must DENY defendants' motion for summary judgment on the copyright infringement claims.

**B.** *Trademark Infringement Claim*

■ When considering trademark infringement claims, two basic questions must be asked. First, whether the plaintiff has a protectable property right in the name it seeks to defend from use by others. *Security Ctr., Ltd. v. First Nat. Sec. Ctrs.,* 750 F.2d 1295, 1298 (5th Cir.1985) (citing *Bank of Texas v. Commerce Southwest, Inc.,* 741 F.2d 785, 786 (5th Cir.1984)). Second, whether use of a trademark is likely to cause confusion. *Id.* "Only when a trademark 'rises to the level of trademark protectability—either by a showing that it is sufficiently distinctive or has acquired secondary meaning—does the question of likelihood of confusion become relevant.'" *Id.* (citings *Sicilia Di R. Biebow & Co. v. Cox,* 732 F.2d 417, 425 (5th Cir.1984)).

■ To determine whether a word or phrase is protectable, it must first be determined into which category, (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful, the word or phrase belongs. *Union Nat'l Bank of Texas, Laredo, Texas v. Union Nat'l Bank of Texas, Austin, Texas,* 909 F.2d 839, 844 (5th Cir.1990). "The significance of assigning a word or phrase to one of these categories is that the assignment determines whether or not, or in what circumstances, the word or phrase is eligible for trademark protection." *Id.*

For example, even though a mark is descriptive, it may be protectable only if it is shown to have acquired secondary meaning. *Security Ctr., Ltd.,* 750 F.2d at 1300 (citing *Vision Ctr. v. Opticks, Inc.,* 596 F.2d 111, 115 (5th Cir.1979), *cert. denied,* 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980)). To establish secondary meaning, "a plaintiff must show that the primary significance of the term in the mind of the consuming public is not the product but the producer." *Id.* at 1301 (citing *Bank of Texas v. Commerce Southwest, Inc.,* 741 F.2d 785, 787 (5th Cir. 1984)). In ascertaining whether secondary meaning has attached to a mark, the court must consider: (1) survey evidence; (2) the length and manner of use of the name; (3) the nature and extent of advertising and promotion of the name; (4) the volume of sales; and (5) instances of actual confusion. *Id.*

The defendants contend that plaintiff's trademark, "The Alternate Plan," is a descriptive mark that has not acquired a secondary meaning. This court finds their argument persuasive. The defendants' motion provides this court with a detailed analysis of the mark under a variety of tests courts have used to determine descriptiveness. *See Zatarains, Inc. v. Oak Grove Smokehouse, Inc.,* 698 F.2d 786 (5th Cir. 1983). These tests include the "dictionary test," the "imagination test," and the "competition test." Using these tests the defendants conclude that plaintiff's mark is descriptive.

In addition, to demonstrate the unprotectability of plaintiff's mark, the defendants explain that plaintiff's mark has not acquired secondary meaning. They cite to deposition testimony and state that with the exception of B & S employees, "*[e]very* witness who has been deposed in this case ... has testified that the words 'alternate' and 'alternative' are used throughout the industry to describe any plans—indeed, all plans—which are not standard worker's compensation policies." Moreover "[n]o witness has testified that the name 'THE ALTERNATE PLAN' is associated with B & S."

Although plaintiff opposes defendants' motion, plaintiff has not effectively contested the issue of its trademark's protectability. Instead, plaintiff relies heavily on the registration of its trademark to protect it from this summary judgment challenge. In its motion, it states that "[a]ccording to the Lanham Trade–Mark Act, a certificate of Registration for THE ALTERNATE PLAN constitutes *prima facie* evidence of the validity of the mark, and the registration establishes B & S' ownership of the exclusive right to use the mark in connection with the respective services." While the plaintiff is correct in stating that, "[t]he Lanham Act deems registration *prima facie* evidence of these facts as a matter of law," it is incorrect in concluding that "[the Act] does not create a mere presumption of these facts." While a statutory presumption of validity is accorded to marks registered under the Lanham Act, 15 U.S.C. §§ 1057(b), 1115(a), this presumption is rebuttable and may be overcome by establishing the descriptive nature of the mark. *Vision Ctr.,* 596 F.2d at 119.

Furthermore, this court is not persuaded by the plaintiff's attempt to convince this court that its trademark is descriptive in nature and has secondary meaning by pointing to B & S' extensive use of the mark in its marketing of the B & S Program, its registration of the mark and the substantial funds it has invested in advertisements bearing the marks. This court is not interested in the extent of B & S's promotional efforts. Rather, B & S' effectiveness in altering the meaning of the trademark to the consuming public concerns us. *See Security Ctr., Ltd.,* 750 F.2d at 1301 (citing *Aloe Creme Lab., Inc. v. Milsan, Inc.,* 423 F.2d 845, 850 (5th Cir.), *cert. denied,* 398 U.S. 928, 90 S.Ct. 1818, 26 L.Ed.2d 90 (1970)).

Having concluded that no genuine issue of fact exists, this court concludes that plaintiff's trademark is not protectable. Thus, this court does not reach the issue of infringement and GRANTS defendants' motion for summary judgment.

### C. *Misappropriation Claim*

The defendants opine that the plaintiff has not proven misappropriation, has presented no concrete evidence of such conduct, and, thus, summary judgment should be granted

in their favor. They insist that "B & S weaves a tale of the 'relationships and roles of Clarendon and Sterling' in developing the defendants' policies" and find that this is insufficient to prove misappropriation. This court must disagree with defendants' characterization.

Viewing the facts alleged in the record in a manner most favorable to the non-movant, as this court must, this court finds that there is a genuine issue of fact as to whether defendants misappropriated plaintiff's trade secret as defined by La.Rev.Stat.Ann. § 51:1431 (1995) and Ala.Code § 8–27–3 (1994). Having reviewed the record, this court concludes that the trier of fact may find that the defendants acquired plaintiff's trade secret, had a duty to maintain its secrecy but disclosed or used it without the plaintiff's consent. Thus, this court DENIES defendants' motion for summary judgment concerning the misappropriation claim.

### JUDGMENT

For written reasons given this date, defendants' motion for summary judgment on the issue of trademark infringement is GRANTED.