AMERICAN MACHINERY
MOVERS, INC.

v.

MACHINERY MOVERS OF NEW
ORLEANS, LLC and Darryl
Breland.

No. Civ.A. 00–3356.

United States District Court,
E.D. Louisiana.

March 26, 2001.

Kenneth L. Tolar, Kenneth L. Tolar, Metairie, LA, for American Machinery Movers, Inc., Plaintiff.

Kyle D. Schonekas, Joelle Flannigan Evans, Schonekas, Winsberg, Evans & McGoey, LLC, New Orleans, LA, for Machinery Movers of New Orleans, L.L.C. and Darryl Breland, Defendants.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is the defendants' Motion for Summary Judgment. For the reasons that follow, the motion is GRANTED.

### Background

Defendant, Darryl Breland worked for the plaintiff, American Machinery Movers, Inc. (AMM), for over twenty years. From 1978 until 1994 he was employed as a welder. In 1994 he was promoted to general manager. However, his employment with AMM came to an end on June 5, 2000. AMM maintains that Breland was terminated for secretly establishing his own business while working for AMM. Approximately one month after he was fired from AMM, Breland officially formed Machinery Movers of New Orleans. Machinery Movers became qualified to do business in Louisiana on September 1, 2000. After starting Machinery Movers, Breland contacted three employees at AMM and hired them to work for Machinery Movers.

Defendants, Machinery Movers of New Orleans and Darryl Breland, now seek summary judgment on all the claims brought by AMM. AMM makes claims for misappropriation of trade secrets, tradename infringement and unfair trade practices.

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See id.* Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249–50, 106 S.Ct. 2505. Summary judgment is also proper if the party opposing the motion fails to establish an essential element of

his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir.1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. *Id.* Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir.1987). Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

## II. *Application*

### A. *Trade Secrets Claim*

■ The Court first addresses the plaintiff's claim for misappropriation of trade secrets. The plaintiff asserts that Breland took AMM's customer lists and copied AMM's records.

■ To make a claim for misappropriation of trade secrets, a plaintiff must show not only (1) the existence of a trade secret and (2) the misappropriation of that trade secret but also that (3) damages resulted therefrom. *Omnitech International, Inc. v. Clorox Co.*, 11 F.3d 1316, 1323 (5th Cir.), *cert. denied*, 513 U.S. 815, 115 S.Ct. 71, 130 L.Ed.2d 26 (1994) (citing *Engineered Mechanical Services v. Langlois*, 464 So.2d 329, 333 (1984)), *writ denied*, 467 So.2d 531 (1985).

Based on the law, the briefs of the parties and the evidence submitted, the Court finds that this claim must fail because the plaintiff has failed to provide evidence of any damage resulting from the claimed trade secret infraction. Plaintiff's Vice President, Dennis Scandurro, has testified that he is unaware of any damages that AMM has sustained as a result of Breland's actions.[1]

### B. *Tradename Infringement*

#### 1.

■ The plaintiff's second claim against Machinery Movers is for tradename infringement. AMM claims that Breland named his company Machinery Movers to be deceptively similar to AMM.

■ Liability for trademark or tradename infringement is predicated on use of a registered tradename which is likely to cause confusion. *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir.1980) (citing 15 U.S.C. § 1114(1)(a)). The threshold question in tradename infringement is whether the name at stake qualifies for protection. *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790 (5th Cir.1983). Use alone does not confer status as a protectable right; the name must be inherently distinctive or have acquired distinctiveness through secondary meaning by virtue of its use. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). The defendants contend that AMM belongs to the descriptive category and thus cannot be protected unless it has acquired some secondary meaning: they urge that machinery movers is a phrase which describes AMM business. The Court agrees.[2] The term "machinery movers"

---

**1.** It also seems problematical that the plaintiff could satisfy the first two elements for misappropriation of trade secrets. It is questionable whether the customer and pricing lists can be considered trade secrets. Moreover, Scandurro has admitted that he has no evidence that Breland actually photocopied or took any lists.

**2.** Plaintiff argues that its name is suggestive rather than descriptive. Plaintiff relies on *Head v. Waggoner*, 552 So.2d 599 (La.App. 2d Cir.1989). In *Waggoner* the name Metal

states (describes) the business in which AMM is involved. *See Metalock Corp. v. Metal–Locking of Louisiana,* 260 So.2d 814 (La.App. 4th cir.1972). This is admitted, as it must be, by AMM's Vice–President.[3] Thus, because descriptive terms ordinarily are not protectable, secondary meaning becomes central to the name's protection. 15 U.S.C. § 1052(e); *Vision Center v. Opticks, Inc.,* 596 F.2d 111, 115 (5th Cir.1979).

2.

■ The concept of secondary meaning recognizes that through extensive use with a particularized product, words with mere ordinary meaning may "come to be known by the public as specifically designating that product." *Zatarains,* 698 F.2d at 791. Words can lose their common meaning and assume specialty. And so, secondary meaning is established only if plaintiff can establish that "the primary significance of the term in the minds of the consuming public is not the product but the producer." *Id.* (quoting *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 118, 59 S.Ct. 109, 83 L.Ed. 73 (1938)). Not an easy task. Secondary meaning turns on proof of the consumer's "attitude toward the mark. The mark must denote to the consumer a single thing coming from a single source." *Zatarains,* 698 F.2d at 795 (quotation omitted).

■ Proof of secondary meaning may, however, consist of both direct and circumstantial evidence, including the length and

manner of advertising, volume of sales, length and manner of use of the name, consumer-survey evidence, consumer testimony, the defendant's intent, and instances of actual confusion. *Pebble Beach Co. v. Tour 18 I Limited,* 155 F.3d 526, 541 (5th Cir.1998); *Sunbeam Prods., Inc. v. West Bend Co.,* 123 F.3d 246, 254 (5th Cir.1997). While each type of evidence alone may not prove secondary meaning, "in combination they may indicate that consumers consider the mark or trade dress to be an indicator of source." *Pebble Beach Co.,* 155 F.3d at 541.

■ Although plaintiff argues that its name has acquired a secondary meaning in the community because it has been in continuous commercial use for 28 years, mere use of a name for a number of years does not by itself enhance or warrant protection of a descriptive name by way of secondary meaning. *Vision Center,* 596 F.2d at 119; *Bank of Texas v. Commerce Southwest, Inc.,* 741 F.2d 785, 788 (5th Cir.1984). Furthermore, plaintiff's few examples of confusion are insufficient as a matter of law to suggest that customers for AMM's services are confusing Breland's company for AMM on the basis of the term "machinery movers" alone. *Id.* The examples of actual confusion plaintiff invokes do not even suggest that consumers were in fact confused.[4]

The intuition that a few consumers might occasionally confuse the two parties does not afford plaintiff the right to appro-

Check was held to be suggestive because a consumer would have to use his or her imagination to conclude that the service provided was that of metal x-rays. Plaintiff maintains that such guess work is required for the term "machinery movers." The Court does not agree. Plaintiff's argument gives an unrivaled new meaning to plain words.

**3.** It seems also useful to observe that AMM's listing in the Yellow Pages is placed under the

heading "Machinery Movers and Erectors." What could be more descriptive, rhetoric aside, is difficult to imagine.

**4.** The Fifth Circuit in *Bank of Texas* rejected even stronger evidence. *See* 741 F.2d at 788. In fact, the testimony of Mr. Scandurro (of AMM) establishes everyone knew Breland was in a new business and people who called Scandurro merely reported to him on Breland's activities.

priate the descriptive name "machinery movers" for its exclusive use. Thus, summary judgment on this issue is appropriate. Because the Court determines that the tradename is not protectable, there is no need to further address the likelihood of confusion factor. *See Sno-Wizard Mfg., Inc. v. Eisemann Prods. Co.,* 791 F.2d 423, 426 (5th Cir.1986) (Only upon proof that the name qualifies for protection does the question of likelihood of confusion become relevant).

### C. *Unfair Trade Practices*

The plaintiff's final claim is for unfair trade practices. The Louisiana Unfair Trade Practices Act (LUTPA) makes illegal all unfair or deceptive acts or practices in the conduct of any trade or commerce. La.Rev.Stat. § 51:1405. What constitutes deceptive practices prohibited by the statute is determined on a case-by-case basis. *Jefferson v. Chevron U.S.A. Inc.,* 713 So.2d 785, 792 (1998). Louisiana courts have restrictively defined unfair practices as conduct "which offends established public policy and which is unethical, oppressive, unscrupulous, or substantially injurious." *Id.* The specificity of the state courts infers a strict construction. A trade practice is deceptive "when it amounts to fraud, deceit, or misrepresentation." *Id.* at 793. However, the Court stresses that the LUTPA does not prohibit sound business judgment or appropriately competitive free enterprise transactions. *Turner v. Purina Mills, Inc.,* 989 F.2d 1419, 1422 (5th Cir.1993).

The plaintiff complains that Breland committed unfair trade practices by setting up a competing business while he was still employed at AMM and by soliciting AMM's customers. The Court finds that this is not of itself a violation of the LUTPA. "[W]ithout a restrictive agreement, at the termination of [his] employment, an employee can go to work for a competitor or form a competing busi-

ness. Even before termination, the employee can seek other work or prepare to compete." *United Group of National Paper Distributors v. Vinson,* 666 So.2d 1338, 1347 (La.App. 2d Cir.1996). Moreover, an employee may solicit customers from his former employee as long as he does so based on his memory, experience, or personal contacts, rather than through the use of confidential information of the former employer. *First Page Operating Under the Name and Corporate Entity, Groome Enterprises, Inc. v. Network Paging Corporation,* 628 So.2d 130, 132–33 (1993). In this case, the plaintiff submits no evidence that Breland solicited AMM's customers while he was still employed at AMM or that he used any confidential information to solicit AMM's customers after he was terminated. Mere suspicion cannot overcome free market competition.

Finally, the plaintiff asserts that Breland violated the LUTPA by convincing AMM employees to leave AMM to work for Machinery Movers. Again, the Court finds that this is not an unfair trade practice. *United Group of National Paper Distributors v. Vinson* instructs that employees may seek other employment or prepare to complete with their employer even before their employment is terminated. 666 So.2d at 1338. In these circumstances, the Court finds that the defendants did not engage in any statutory unlawful, unfair or deceptive trade practices. What Breland did might look to some to be unseemly, to reflect poorly on his character and his instincts for loyalty. But his conduct has not been defined as unjust. Thus, the defendants are also entitled to summary judgment on the plaintiff's claim under the LUTPA.

Accordingly, the defendants' motion for summary judgment is granted. Plaintiff's

claims against the defendants are hereby dismissed.