ARCHIBALD S. NICKERSON *vs.* EDWARD RUSSELL & others.

Suffolk. November 15, 1898. — March 2, 1899.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Contract of Employment — Partnership — Effect of Dissolution — Evidence.*

If a person is hired for a year by a firm composed of three members, and the firm is dissolved during the year by the retirement of two of the members, but the business is continued by the other member in the same manner and at the same place, the remaining by such employee at work after the dissolution, although he knew that the retiring partners had withdrawn, and that but one of the three members was continuing the business, and his receiving from that member the weekly compensation which the three partners agreed that he should have from the three jointly cannot be said, as matter of law, to have been a surrender or abandonment by him of his joint contract with the three partners, or the making of a new contract with the one who continued to carry on the business.

In an action against the members of a partnership for an alleged breach of a contract to employ the plaintiff, no exception lies to the admission in evidence of a conversation between the plaintiff's wife and one of the defendants as to the terms or details of the contract, either just before the latter became a partner and when he was in the employ of the firm, or just after he became a partner,

it not appearing that the judge refused to limit the effect of the evidence, if the jury should find that the statement was made before the defendant became a partner.

CONTRACT, against Edward Russell, Edward B. Russell, and William L. Gage, formerly copartners as Edward Russell and Company, for an alleged breach of an agreement to employ the plaintiff. Trial in the Superior Court, before *Maynard*, J., who allowed a bill of exceptions, in substance as follows.

It appeared that the plaintiff first entered the employment of Edward Russell and Company on July 1, 1889; that at that time the firm consisted of George H. Hull, Jr., and the defendants Edward Russell and Edward B. Russell; that the conversation relating to his original employment was between the plaintiff and Edward B. Russell; that in July, 1894, the firm was dissolved by the death of Hull, and a new firm was then constituted under the same name of Edward Russell and Company, consisting of the defendants Edward Russell and Edward B. Russell, and this firm continued to do business until January 1, 1895, at which time it was again dissolved, and a new firm was formed consisting of all three of the defendants; that the last named firm continued in business until March 19, 1897, when it was dissolved by the retirement of the defendant Gage; that notice of the retirement of the defendant Gage was duly published; that on March 31, 1897, the defendant Edward B. Russell retired from the firm, and notice of his retirement was duly published; that after the retirement of Edward B. Russell and until December 31, 1897, Edward Russell continued to do business alone under the firm name of Edward Russell and Company; that the firm of Edward Russell and Company did business as a mercantile agency, which also included a collection department; and that the plaintiff during his whole employment acted as manager of this collection department. The plaintiff testified that he knew of the retirement of Gage and of Edward B. Russell at the time each ceased to be a member of the firm; that in each case he continued to stay and perform the same duties that he performed before; that when Edward B. Russell left the firm, the defendant Edward Russell issued a general order to all the clerks in the office stating that another person had been appointed as general manager, and that they were all to obey this new manager; and that all

of the employees, including himself, did obey this new manager from that time. It also appeared that the reorganization of the firm from time to time did not, except as above stated, cause any change in the manner of doing its business, and that the business was carried on without interruption at the same place and under the same name during the whole period from July, 1889, to July, 1897. To prove the contract set forth in the declaration, the plaintiff testified that a few days after the 1st of January, 1897, he had a talk with the defendant Edward B. Russell, as a result of which it was agreed between them that he was to remain in the employ of the defendants for the coming year on the same terms as theretofore. He further testified that it was agreed between him and Russell that his compensation should be one half of the net profits of his department for each year, with a guaranty of one thousand dollars yearly if one half the net profits did not amount to that sum; that shortly after his original employment he was asked by the defendant Gage, who then and until January 1, 1895, was employed by the firm as bookkeeper, cashier, and canvasser, and at the end of each year furnished the plaintiff with a statement of the profits and attended to the adjustment thereof with the plaintiff, as to how he wished to draw his salary; that it was then agreed that he should receive weekly payments of nineteen dollars each; and that such payments were made each week until and including July 3, 1897, and settlements of the profits were made at the end of each year.

It was disputed whether the original hiring was yearly or at will. On this point the plaintiff offered the following evidence of a conversation between his wife, Hattie B. Nickerson, and the defendant Gage, at the office of Edward Russell and Company:

"*Q.* Did you have a talk at one time with Mr. Gage with reference to the time when your husband's compensation was due? *A.* I did. — *Q.* When was that talk? *A.* I am not quite sure whether it was the very last of December or the first of January. It was about the first of the year 1895. — *Q.* And what was the talk?" This question was objected to by the defendants, but was allowed to be put; and the defendants excepted. "*A.* Well, Mr. Gage told me there was nothing due Mr. Nickerson, as far as they knew, until after December 31."

The plaintiff testified that, as a part of the conversation in January, 1897, already referred to, between him and Edward B. Russell, the latter furnished him with a statement of the profits of the collection department of Edward Russell and Company of previous years, and that this statement was correct. It further appeared that for the first six months of 1897 the net profits of the collection department were $1117.25. There was evidence tending to show that the receipts for the different months varied, and were usually somewhat greater during the last half of the year. The plaintiff testified that at the time of his alleged discharge the manager of Edward Russell and Company told him that they had decided to place the collection department in the hands of attorneys at law. There was also evidence tending to show that for the last six months of 1897 the work formerly done by the plaintiff was done by attorneys at law; that the nature and scope of the business done by the department was not changed; and that the net profits of the department during the last six months of 1897 were not greater than one thousand dollars.

The defendants requested the judge to direct the jury to return a verdict for the defendants; and also requested the following instructions, among others :

" 1. The employment of service proved by the evidence was a service at will, and might be terminated by either party at will, upon notice to the other of one week.

" 2. If the original contract of service was made between the plaintiff and a firm of persons different in whole or in part from the firm of Edward Russell and Company as constituted at the date of the writ, and if the plaintiff simply stayed in the service of the new firm when the change or changes therein were made without any conversation or agreement with the members thereof, and was paid the same compensation in the same way as theretofore, but if nothing was said as to his engagement by the new firm for any stated time, then the contract of service was thereafter at will.

" 3. The most that the plaintiff is entitled to recover under any circumstances is what he would have received under the contract, if he had performed the services required by it, and the burden is upon him to show what such amount is.

"4. If the contract was originally with the firm, consisting of the three defendants, and if the firm was changed by the retirement of one or more of the partners, and the plaintiff continues with the new firm, performing the same services and accepting pay from them on the same terms as provided in the original contract, and he knows of, but makes no objection to the change, although nothing is said expressly renewing the contract with the new firm, then the original contract is terminated, and the retiring members of the old firm are no longer liable upon it."

The judge declined to rule as requested; and the defendants excepted.

The judge instructed the jury, among other things, as follows:

"I have been asked to say to you that the fact that the partnership was changed during that year would prevent him from recovering. I cannot say that to you absolutely. That is one of the things which you will take into account. If there was a partnership which hired him for a year, he could not prevent their dissolving, if they saw fit; he had no control over the partnership; but if the partnership did make that bargain with him for a year, he had a right to the benefit of his bargain whether they dissolved the partnership, or one partner dropped out and another partner came in. Of course, it would be a different partnership, but these three persons who constituted the partnership would be liable to him upon the contract, because they made it with him.

"Now, if there was any understanding when one of the partners dropped out, or both dropped out, and left the senior member alone standing there, if there was a mutual understanding that that old contract should be given up, and that he was to work simply for the new partnership independently of the old contract, then of course the contract was at an end, and he cannot recover now; that is, it was perfectly competent for him at any time to agree with the old partnership that the old contract should be given up, and that agreement may be determined, either by the words of the parties if there were any, and in the absence of words if there were actions of which the only reasonable interpretation could be that it was an understanding that the old contract was given up, you have a right to find it

was so. But if there was not anything of the kind, then he would have a right to stand on his original contract as against the old firm. . . .

"Now if you find there was this contract for a year with the old firm, and unless you find upon the evidence that the contract was abandoned by the parties, that is, that their acts were such that the parties had a right to understand that it was thrown up, then the contract stands, and if they discharged him without his consent he would be entitled to recover."

The jury returned a verdict for the plaintiff; and the defendants alleged exceptions.

*E. I. Smith,* for the defendants.

*E. R. Thayer,* for the plaintiff.

BARKER, J. The hiring of the plaintiff for the year 1897 by the firm was a joint hiring by the individuals who composed the firm; and as the business was not closed by the voluntary dissolution of the firm, and was continued in the same manner and at the same place, the dissolution did not end the plaintiff's employment for the year. *Hughes* v. *Gross,* 166 Mass. 61. That employment continuing, the plaintiff remained bound to do the same things in reference to the business which was still carried on, and the defendants remained jointly bound to pay him therefor. Therefore his remaining at work after the dissolution, although he knew that the retiring partners had withdrawn, and that but one of the three members was continuing the business, and his receiving from that member the weekly compensation which the three had agreed the plaintiff should have from the three jointly cannot be said, as matter of law, to have been a surrender or abandonment by the plaintiff of his joint contract with the three defendants, or the making by him of a new contract with the one who continued to carry on the business. For these reasons, the instructions requested by the defendants were rightly refused, and those given, which left to the jury the question whether upon the dissolution there was a mutual understanding that the old contract should be considered at an end, were at least sufficiently favorable to the defendants. The same considerations show the fallacy of the defendants' arguments that the plaintiff's remaining at work and accepting pay from that one of his employers who continued to carry on the business was in law an assent on

the plaintiff's part to the assumption of all liability as to the plaintiff by the one who continued the business, and that thereafter there was merely a contract between those two, and terminable at the will of either.

The exception to the admission of the testimony as to the statements of the defendant Gage must be overruled. The date of that conversation could be found to have been either in December, 1894, or in January, 1895. If at the later date, Gage was a partner, and his statements were admissible as against all the defendants; if at the earlier date, his statements were at least admissible against himself. It does not appear that the court refused to limit the effect of the evidence, if the jury should find that the statement was made before Gage became a partner.

The objections that the action was prematurely brought, and that the rule of damages was wrongly stated, are not now insisted upon.                                    *Exceptions overruled.*