[Civ. No. 40794. First Dist., Div. Two. July 23, 1979.]

CEBU ASSOCIATION OF CALIFORNIA, INC.,
Plaintiff and Respondent, v.
SANTO NINO DE CEBU USA, INC., et al.,
Defendants and Appellants.

**COUNSEL**

Stanley W. Blackfield for Defendants and Appellants.

Townsend & Townsend, Stephen S. Townsend and Marvin W. Murray for Plaintiff and Respondent.

## OPINION

**MILLER, J.**—Santo Nino de Cebu USA, Inc. and others appeal from a preliminary injunction precluding that organization from 1) using the name "Cebu" and/or "Santo Nino de Cebu" as part of the name, title, or designation of appellants' organization or in connection with the solicitation or promotional purposes, and 2) using any name or mark confusingly similar to respondent's trade names and service marks, "Cebu Association," "Cebu Association of California," and/or "Fiesta of the Santo Nino de Cebu."

Cebu is the name of one of the major islands of the Philippine Islands. Santo Nino de Cebu is the name of a religious artifact in the form of a statue of the infant Jesus and is considered the patron saint of the Island of Cebu. The Fiesta of the Santo Nino de Cebu is a Filipino-Catholic religious and cultural celebration of the feast day of the patron saint, consisting of religious services, public feasting, music, dancing, etc. The Fiesta of the Santo Nino de Cebu is a traditional celebration which emanated from the Philippine Islands and is celebrated in United States cities such as Salinas and Los Angeles as well as San Francisco.

Respondent Cebu Association of California, Inc. is a quasi-religious, charitable membership and service organization, founded in 1968 and headquartered in San Francisco. Since 1968, respondent has employed as its trade name the phrase "Cebu Association of California" which is often abbreviated to the short form "Cebu Association." One of respondent's principal activities is the sponsorship of the Fiesta of the Santo Nino de Cebu in San Francisco. Respondent has conducted the event every year since 1968 and has enjoyed the "Fiesta of the Santo Nino de Cebu" designation in the San Francisco Bay Area for the eight years preceeding the present dispute.

Respondent's activities have included substantial efforts to publicize itself and its principal event through newspaper articles, commemorative programs, and flyers which have included respondent's names, "Cebu Association of California," "Cebu Association," and "Fiesta of the Santo Nino de Cebu." These activities have resulted in substantial public recognition of respondent's names. In addition, respondent has received numerous awards and commendations from prominent organizations and individuals, such as the San Francisco Board of Supervisors and the Mayor of San Francisco who officially sanctions the Fiesta of the Santo Nino de Cebu in San Francisco.

In March 1976, a number of the members of Cebu Association, including the individual appellants herein, left the organization and formed a new nonprofit association called, "Santo Nino de Cebu Association, U.S.A." After being requested by Cebu Association's attorney not to use the word association, the name was changed to "Santo Nino de Cebu, USA, Inc." That name was chosen because most of the members were from Cebu and venerated the patron saint.

Appellants commenced preparation and planning of their own event, called "Fiesta of the Santo Nino de Cebu" which was scheduled approximately one week prior to respondent's "Fiesta of the Santo Nino de Cebu" at the same church. As a result of this conflict, respondent filed suit charging appellants with unfair competition as well as infringement of respondent's common law rights in three trade name and service mark designations, to wit, "Cebu Association of California," "Cebu Association," and "Fiesta of the Santo Nino de Cebu." The preliminary injunction was issued on August 19, 1976.

The critical question presented to this court is whether an organization can be the owner of common law trade names which are either the name of a geographic location or a patron saint. We conclude that it cannot.

*The Name "Cebu"*

As noted by the trial court, the word "Cebu" denotes a major island which is part of the Philippine Islands. The name "Cebu Association" includes this geographic term and is simply descriptive of respondent and its area of interest, i.e., an association of persons having some connection with the island of Cebu.

Section 14220, subdivision (e) of the Business and Professions Code provides that geographic and other purely descriptive words, used in their descriptive sense, are not protected as trade names or service marks. Although it may no longer be said with finality that a geographic name cannot acquire status of a protected mark (*Continental Motors Corp.* v. *Continental Aviation Corp.* (5th Cir. 1967) 375 F.2d 857, 862), public policy has directed that the exclusive right to the use of a name or mark cannot consist of words in common use as designating locality or region of a country. (*Alaska Northwest Publishing Co.* v. *A. T. Publishing Co.* (D.C.Ala. 1970) 319 F.Supp. 963, 965, rev. on other grounds in 458 F.2d 387.)

The reason for this policy was explained by the United States Supreme Court in *Canal Company* v. *Clark* (1871) 80 U.S. (13 Wall.) 311, 324 [20 L.Ed. 581, 584]: "[I]t is obvious that the same reasons which forbid the exclusive appropriation of generic names or of those merely descriptive of the article manufactured and which can be employed with truth by other manufacturers, apply with equal force to the appropriation of geographical names, designating districts of country. . . .[I]t would greatly embarrass trade, and secure exclusive rights to individuals in that which is the common right of many."

Respondent cites *Hooper* v. *Stone* (1921) 54 Cal.App. 668 [202 P. 485] and *Law* v. *Crist* (1940) 41 Cal.App.2d 862 [107 P.2d 953] for the proposition that charitable, religious and other societies may establish an exclusive proprietary right to the name under which the society is operating. Both cases are inapposite to the instant action. In *Hooper*, former members of the Christian Science Society of the University of California sought to form a new organization with the identical name. Similarly, in *Law*, a complaint by persons acting under the name of the United Lodge of Theosophists to enjoin the use of the name United Lodge of Theosophists, Inc., was held to state a cause of action. Neither case held that the plaintiffs had an exclusive proprietary right to each and every word in the organization's name.

Respondent correctly notes that a composite mark, i.e., a mark composed of more than one word, must be considered in its totality. It is improper to dissect and analyze component words or phrases. (*Beckwith* v. *Comm. of Patents* (1920) 252 U.S. 538, 545-546 [64 L.Ed. 705, 708, 40 S.Ct. 414].) However, that is precisely what the subject injunction purports to do. The trial court has taken one word from respondent's name, i.e., "Cebu" and enjoined appellants from using that word in its name, in connection with solicitation of charitable contributions, or in advertising and/or promotion of any activity of appellants.

Respondent may properly request that another organization be prevented from using a name so similar to its own that persons of ordinary intelligence are likely to be misled. (*Scudder Food Products* v. *Ginsburg* (1943) 21 Cal.2d 596, 600 [134 P.2d 255].) However, where, as here, anyone who can read common print and has ordinary sight cannot

possibly take the name of defendants for the name of the plaintiff, it must be held as a matter of law that they are not similar and the public legally could not be misled. (*Id.* at pp. 601-602.)

■ We can only conclude that the injunction against use of the word "Cebu" was improper. A geographical word remains such regardless of the extent to which it is known or unknown throughout the country. (*Application of Westgate Sea Products Co.* (C.C.P.A. 1946) 154 F.2d 1010, 1011; *In re Kraft-Phenix Cheese Corporation* (C.C.P.A. 1941) 120 F.2d 391, 392.) Although respondent argues that "Cebu" has acquired a secondary meaning and, therefore, the holding in *American Waltham W. Co.* v. *United States W. Company* (1899) 172 Mass. 584 [53 N.E. 141], should be followed, we disagree. There, the manufacturer had become associated with the Town of Waltham through long use of the name. Here, the Cebu Association of California had only been in existence for eight years at the time the injunction issued.

All persons with a legitimate claim to the same geographical designation have the right to use that designation. Exclusive use of the word "Cebu" by respondent would preclude the formation of any other group interested in the island of Cebu to use such names as "Friends of Cebu," "Cebu Circle," and "Cebu Brotherhood." The courts have been reluctant to allow a company to acquire all the rights to a common word, one in regular use. No one is allowed to have exclusive rights in a mark which others can employ with equal truth for the same purpose. (*Standard Paint Co.* v. *Trinidad Asphalt Mfg. Co.* (1911) 220 U.S. 446, 453 [55 L.Ed. 536, 540, 31 S.Ct. 456].) In other words, one cannot wholly appropriate to private use a generic or descriptive term. (*Jewel Companies, Inc.* v. *Westhall Co.* (D.C.Ohio 1976) 413 F.Supp. 994, 1000, aff. 575 F.2d 1176.) Therefore, we find that the court may properly enjoin the use of the composite marks, "Cebu Association of California" and "Cebu Association," but not the single word "Cebu" from use by another organization.

*The Name "Santo Nino de Cebu"*

■ The issue of whether appellant may be enjoined from using the name "Santo Nino de Cebu" is a matter of first impression.

A common mark is one which has been stripped of its claim to distinctiveness by reason of its constant use by others. It is then available for use by all and can be claimed as a valid trade name or service mark

by none. (3 Callman, Unfair Competition, Trademarks and Monopoly (3d ed.) § 74.1, p. 224-225.) Thus, in *Polish N. C. Church etc. v. Diocese of Buffalo* (1918 Sup.) 171 N.Y.S. 401, the court held that the word, "Rosary," when used in connection with a church cannot be more than a common mark, as it refers to a form of devotion common to the Roman Catholic Church throughout the world. Similarly, a personal name may also become generic when it identifies an extremely popular figure. In *Col. W. F. Cody Historical Picture Co. v. Colonial A. Co.* (D.Colo. 1922) 284 F. 873, the court held that Colonel William F. Cody's nickname, "Buffalo Bill," became the generic term for a wild west hero and could not be granted exclusive use by one organization.

Perhaps the best explanation for a policy of nonexclusivity was offered in *Polish N. C. Church etc., supra*: "It is a fundamental principle in patent and trade-mark and trade-name law that a plaintiff cannot obtain a patent, nor can he enjoin the production of a patented article, or the use of a trade-name or of a trade-mark, provided that patented article was in common use before the patent was given to the plaintiff, or provided the trade-name or the trade-mark was in public use before that name or trade-mark was adopted by the plaintiff. In short, in all such cases the plaintiff, seeking to restrain the use of a specific name, fails if it can be shown that the patented article or the name of the trade-mark had become public property through public use; and, applying the analogy to the case under consideration, it is apparent that, inasmuch as the devotion of the Rosary was instituted by St. Dominic in the year 1215, and for centuries has been used as a form of devotion in the Roman Catholic Churches throughout the world, and during such time has been known as the devotion of the Rosary, there has come to the public at large a right to that devotion, which is a public right, and which cannot be taken from the public by a private corporation or a private individual; and just as that right cannot be taken from the public, neither can the name of that devotion, to wit, the devotion of the 'Rosary' be taken from the public, and a congregation of Roman Catholics cannot be denied the use of the name for a Roman Catholic Church anywhere." (171 N.Y.S. at p. 403.)

It appears to this court that this reasoning is even more appropriate when applied to the name of a patron saint.

Respondents apparently contend that the name of a patron saint may acquire a secondary meaning, and thus may be employed by a single

organization. Respondent cites *National Spiritual Assembly* v. *National Assembly* (N.D.Ill. 1966) 150 U.S.Pat.Q. 346, wherein the court enforced the first user's rights in the word "Baha'i." Contrary to respondent's assertion that Baha'i is the name of a saint, the definition of "Baha'i" is "an adherent of a religious movement originating among Shia Muslims in Iran in the 19th century and emphasizing the spiritual unity of mankind." (Webster's New Collegiate Dict. (7th ed. 1972) p. 65.) The founder of the faith is Baha u llah. The case neither mentions his name nor considers whether any single group may gain exclusive use to it.

To hold that one organization can appropriate the name of a patron saint would mean that only one group could employ such saints' names as St. Valentine, St. Patrick, and St. Francis of Assisi. Any such ruling would obviously produce unfortunate results. We consequently find that it was error to enjoin the use of the name "Santo Nino de Cebu."

*The Fiesta of the Santo Nino de Cebu*

■ We agree with appellants' analysis concerning the trial court's error in concluding that respondent is the owner of a common law trade-name or service mark right in the designation, "Fiesta of the Santo Nino de Cebu."

Preliminarily, the "Fiesta of the Santo Nino de Cebu" does not refer to goods but to a sponsored event, a service, and thus can only be protected as a service mark. (Bus. & Prof. Code, §§ 14206, 14207.) Section 14206 of the Business and Professions Code defines a service mark as "a mark used in the sale or advertising of services to identify the services of one person and *distinguish* them from the services of another." (Italics supplied.) Moreover, "A word used as a service mark must distinguish the user's service from similar services provided by others. If the word merely connotes a particular type of [service] regardless of who provides it, it is not sufficiently distinctive for this purpose." (4 Callman, Unfair Competition, Trademarks and Monopoly (3d ed.) § 98.4(b), at p. 670.)

Accordingly, a service mark must be distinctive, separate and apart from the identity of the service itself, so as to permit many people to offer the same service. The service mark merely permits the public to identify the sponsor or provider of the service. One cannot appropriate the identity of the service itself as the service mark, or else all others would be excluded from the field.

"Fiesta of the Santo Nino de Cebu," which merely describes the service (which is neither unique to nor invented by respondent), would not be protected at common law nor registrable under section 14220, subdivision (e) of the Business and Professions Code, as it merely consists of a mark which, "when applied to the . . . services of the applicant, is merely descriptive . . . of them."

Here, respondent has never used "Fiesta of the Santo Nino de Cebu" as a service mark. Respondent has merely sponsored an event which has that name. The Fiesta of the Santo Nino de Cebu has been celebrated for hundreds of years in the Philippines and since 1934 in Los Angeles. Such event, under that name, is also held in Salinas and perhaps in other places both within and outside California.

That which distinguishes one fiesta from another is the name of the sponsor. If respondent sponsors a "Fiesta of the Santo Nino de Cebu," it will do so under the name of the Cebu Association of California. We see no problem with appellant sponsoring a similar event under a different name.

It is clear that the Fiesta of the Santo Nino de Cebu is primarily a Catholic religious observance with Filipino cultural overtones. Respondent did not invent the fiesta or the name. Respondent merely borrowed an old tradition and imported it into the Bay Area.

■ In an action for infringement, the plaintiff must prove the originality of the mark as well as the confusing similarity of the defendant's mark. (*Stroehmann Bros. Co.* v. *Manbeck Baking Co.* (1938) 331 Pa.96 [200 A. 97, 99].) In the instant action, we find there is neither a service mark in the designation "Fiesta of the Santo Nino de Cebu" nor, if there was one, would it be original. Therefore, there can be no proprietary right to the designation, "Fiesta of the Santo Nino de Cebu."

In light of the foregoing, that portion of the preliminary injunction enjoining appellants from using any name or mark confusingly similar to plaintiff's trade-names and service marks, "Cebu Association" and "Cebu Association of California" is affirmed and the remainder of the injunction is reversed.

Taylor, P. J., and Rouse, J., concurred.