625 So.2d 463 (1993)
GREAT SOUTHERN BANK, Petitioner,
v.
FIRST SOUTHERN BANK, Respondent.
No. 80414.
Supreme Court of Florida.
October 7, 1993.
*465 David Baker and George Ord, Alley, Maass, Rogers & Lindsay, P.A., Palm Beach, and Jane Kreusler-Walsh and Larry Klein, Jane Kreusler-Walsh, P.A., West Palm Beach, for petitioner.
Lawrence S. Gordon and Robert H. Miller, Jr., Caruana, Gordon and Langan, P.A., Miami, for respondent.
SHAW, Justice.
We review Great Southern Bank v. First Southern Bank, 601 So.2d 584, 586 (Fla. 4th DCA 1992), in which the district court certified this question as one of great public importance:
IS THE NAME "FIRST SOUTHERN BANK" DESCRIPTIVE OR GENERIC, AND THEREFORE NOT ENTITLED TO PROTECTION IN THE ABSENCE OF PROOF THAT IT HAS ACQUIRED A SECONDARY MEANING?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
First Southern Bank opened for business in September 1987; Great Southern Bank opened for business in April 1989, twenty miles away, and was sued by First Southern Bank for common-law trade name infringement, common-law unfair competition, and violation of section 495.151, Florida Statutes *466 (1989) (Florida's dilution[1] statute). The district court determined that the name FIRST SOUTHERN BANK is "arbitrary or fanciful," not "descriptive or generic," and therefore enjoined the Great Southern Bank from using the name GREAT SOUTHERN BANK or any similar name.
We answer in the affirmative the question posed to us by the district court. The name FIRST SOUTHERN BANK is entitled to protection only upon proof that the name has acquired a secondary meaning.

I. The Common Law
We have long viewed geographic and descriptive names as common property. We said in Addison v. Hook, 91 Fla. 337, 343, 107 So. 623, 625 (1926), that "[m]ere geographical names are regarded as common property" and "could they be appropriated exclusively, the appropriation would result in mischievous monopolies." We therefore refused to enjoin the use of the name TAMPA MATTRESS FACTORY for the benefit of the prior user of the identical name, who was in the same city, selling the same product as the later user of the name. We observed that the result would be different if the name were used "fraudulently for the purpose of misleading buyers as to the actual origin of the thing produced." Id. at 344, 107 So. at 625.
We similarly determined in Sun Coast, Inc. v. Shupe, 52 So.2d 805, 805-06 (Fla. 1951), that because the words SUN and COAST are descriptive, their use cannot be enjoined absent a showing that the public is being "tricked," or "deceived," not merely confused. Id. at 805-06. We noted that to grant an injunction would have the effect of allowing a person to combine words of common meaning and thereby preempt the use of the words. Id. at 805. We likewise held in Surf Club v. Tatem Surf Club, Inc., 151 Fla. 406, 10 So.2d 554 (1942), that SURF CLUB cannot be protected under the common law. We observed that SURF is either generic, geographic, or descriptive; "geographic names are considered common property and may not in ordinary circumstances be appropriated." Id. at 410, 10 So.2d at 556. We noted, in commenting on the words SURF CLUB: "These [are] generic words ... plaintiff did not have the pre-emptive right to employ them." Id. at 412, 10 So.2d at 557.[2]
Applying Addison, Shupe, and Tatem to the instant case, we conclude that the name FIRST SOUTHERN BANK is not entitled to protection without proof of having acquired a secondary meaning. See Quality Courts United v. Jones, 59 So.2d 20, 21 (Fla. 1952) (holding that an emblem bearing the words "Quality Court" had acquired a secondary meaning as a result of an extensive advertising campaign, including distribution of one million guide books to travelers; therefore, competitor's use of the word "quality" in the term "quality motor court" was enjoined). We have answered the certified question based on Florida's common law. This however does not end our inquiry.

II. The Lanham Act

A. Distinctiveness
We also analyze this case based on cases decided under comparable provisions of the federal Lanham Act[3] [hereinafter Act], because section 495.181, Florida Statutes (1991),[4] directs that these cases be given *467 great weight when construing chapter 495, Florida Statutes (1991). We find that the result we reach today would obtain under the Act as well.
Under the Act, protection is afforded against the confusing use of corporate names based on the same principles as apply to protection of trademarks, and is subject to the same limitations and conditions.[5] 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 9.01[1]-[2] (3d ed. 1992) [hereinafter McCarthy]. A mark can be registered under the Act if it is distinctive.[6] 15 U.S.C. § 1052.[7] It cannot be registered if it is merely descriptive unless it has acquired secondary meaning. 15 U.S.C. § 1052(e)(1). Specifically, descriptive and geographically descriptive names used as names of businesses require proof of secondary meaning for legal protection, as do trademarks. McCarthy, § 9.01[2].
Cases decided under the Act explain what is distinctive, and therefore protectable without proof of secondary meaning, and what is descriptive. Distinctive marks are coined or fanciful, arbitrary, or suggestive. Professor McCarthy explains these terms based on Act cases. Fanciful or coined marks are explained as follows:
"Fanciful" marks consist of "coined" words that have been invented or selected for the sole purpose of functioning as a trademark. Such marks comprise words that are either totally unknown in the language or are completely out of common usage at the time, as with obsolete or scientific terms... .
If, in the process of selecting a new mark, a seller sits down and invents a totally new and unique combination of letters or symbols that results in a mark that has no prior use in the language, then the result is a "coined" or "fanciful" mark.
McCarthy, § 11.03[1] (footnote omitted).[8] KODAK, POLAROID and XEROX are examples of fanciful or coined marks. Id. § 11.03[4]. Professor McCarthy thus explains arbitrary marks:
Arbitrary marks comprise those words, symbols, pictures, etc., that are in common linguistic use but which, when used with the goods or services in issue, neither suggest nor describe any ingredient, quality or characteristic of those goods or services.
... .
"Arbitrary" means that the ordinary meaning of the word mark is applied to these goods in a totally arbitrary and non-descriptive sense. For example, IVORY soap is not made of ivory, OLD CROW whiskey is not distilled from old crows, and ROYAL baking powder is not used exclusively by royalty.
Id. § 11.04[1] (footnote omitted).[9] BLACK & WHITE scotch whiskey, ICE CREAM *468 chewing gum, and APPLE computers are examples of arbitrary marks. Id. § 11.04[3].
Suggestive marks[10] defy easy definition. Id. § 11.20[3], [4].[11] Three tests have evolved to determine whether a mark is suggestive: the imagination test (how much imagination is required by the customer to get some description of the product from the term); the competitor's need test (is the mark needed by competitors to describe their goods); the competitor's use test (to what extent is the mark used by others on similar products). Id. § 11.21-.22. We approve these tests as appropriate for use with chapter 495. Suggestive marks include ARTYPE for cutout letters for artists, COPPERTONE for sun tan oil, FROM MAINE'S COOL BREEZE TO THE FLORIDA KEYS for a moving service, GOBBLE GOBBLE for processed turkey meat, HEARTWISE for low-fat foods, and TELECHRON for electric clocks. Id. § 11.23.
Descriptive marks include marks that are simply descriptive, laudatorily descriptive and geographically descriptive. Thus:
A mark is "descriptive" if it is descriptive of: the intended purpose, function or use of the goods, the size of the goods, the class of users of the goods, a desirable characteristic of the goods, or the end effect upon the user.
... .
Marks that are merely "laudatory" and descriptive of the alleged merit of a product are also regarded as being "descriptive."
... Self-laudatory or "puffing" marks are regarded as [descriptive].
Id. § 11.05[2][a], [b] (footnotes omitted). FRIENDLY, DEPENDABLE, and PREFERRED are examples of laudatory descriptive marks. Id. § 11.05[2][b]. GREAT and FIRST also are laudatory and, thus, descriptive marks. Regarding geographically descriptive marks, Professor McCarthy has this to say:
[D]escriptive geographical terms are in the "public domain" in the sense that every seller should have the right to inform customers of the geographical origin of his goods.
... .
A "geographically descriptive term" is any noun or adjective that designates geographical location and would tend to be regarded by buyers as descriptive of the geographic location of origin of the goods or services.
... .
A geographically descriptive term can indicate any geographic location on earth, such as continents, nations, regions, states, cities, streets and addresses, areas of cities, rivers, and any other location referred to by a recognized name.
... .
In order to determine whether or not the geographic term in question is descriptively used, the following... [question is] relevant:
(1) Is the mark the name of the place or region from which the goods actually come? If the answer is yes, then the *469 geographic term is probably used in a descriptive sense, and secondary meaning is required for protection.
Id. §§ 14.01, 14.02, 14.02[1], 14.03 (footnotes omitted). SOUTHERN is geographically descriptive.
Generic terms, by their nature, cannot serve to identify the source of goods or services and thus are not protectable. 15 U.S.C. § 1065; McCarthy, § 12.01.[12]
The concepts of "generic name" and "trademark" are mutually exclusive. Thus, if, in fact, a given term is "generic," it can never function as a mark to identify and distinguish the products of only one seller... . "A generic term is one that is commonly used as the name of a kind of goods... . Unlike a trademark, which identifies the source of a product, a generic term merely identifies the genus of which the particular product is a species."
... .
Generic names are regarded by the law as free for all to use. They are in the public domain.
McCarthy, § 12.01[1], [2] (footnote omitted).
We approve these definitions and adopt them for use with chapter 495.[13] We disapprove Gaeta Cromwell, Inc. v. Banyan Lakes Village, 523 So.2d 624 (Fla. 4th DCA), review denied, 531 So.2d 1353 (Fla. 1988), to the extent that definitions therein disagree with those above.
A composite mark is tested by looking at it as a whole, rather than its parts, although it is acceptable to separate a compound mark and discuss each part with respect to the question of descriptiveness "provided that the ultimate determination is made on the basis of the mark in its entirety." McCarthy, § 11.10[2]. The trial court's error in finding "First Southern Bank" suggestive was facilitated by failing to view the mark as a whole, as required. Applying the tests of suggestiveness above, no great imagination is required to identify the product as banking services when the mark contains the word "bank"; many others use the word "southern" in their mark; and businesses in the south have the need and right to use the term descriptively. Applying the above definitions to the instant case we hold as a matter of law that the name FIRST SOUTHERN BANK, comprised of a laudatorily descriptive term, a geographically descriptive term, and a generic term, is, taken as a whole, merely descriptive and cannot be protected absent a secondary meaning. This too does not end our inquiry, because a determination of infringement involves more factors than the single factor of the distinctiveness of the name itself.

B. Infringement
A cause of action for infringement is based on "likelihood of confusion." 15 U.S.C. § 1052(d). The various federal circuits have developed unique lists of factors to determine likelihood of confusion, all deriving from the first Restatement of Torts § 731 (1938). 2 McCarthy, § 24.06. The modern Restatement distills these factors into eight.[14] Professor McCarthy summarizes these as follows:
(1) the degree of resemblance between the conflicting designations;
(2) the similarity of the marketing methods and channels of distribution;
(3) the characteristics of the prospective purchasers and the degree of care they exercise;
(4) the degree of distinctiveness of the senior user's mark;
(5) where the goods or services are not competitive, the likelihood that prospective buyers would expect the senior user to expand into the field of the junior user;
(6) where the goods or services are sold in different territories, the extent to which the senior user's designation is known in the junior user's territory;
(7) the intent of the junior user; and

*470 (8) evidence of actual confusion.
2 McCarthy, § 24.06[4].[15] We approve these factors as appropriate to determining both registrability[16] and infringement[17] under chapter 495. We disapprove Tio Pepe, Inc. v. El Tio Pepe de Miami Restaurant, Inc., 523 So.2d 1158, 1159 (Fla. 3d DCA), review denied, 534 So.2d 399 (Fla. 1988), to the extent that it uses a simpler test of infringement.

III. Dilution
Dilution is an action unknown under the Act. As a result, a number of states have adopted dilution statutes, and Florida's section 495.151 is one. Dilution differs from infringement in that it does not necessarily depend on either competing goods or likelihood of confusion. A violation of section 495.151[18] is for the court to determine, based on either 1) a likelihood of injury to business reputation or 2) dilution of the distinctive quality of the trade name. § 495.151. Professor McCarthy explains the action for dilution. 2 McCarthy, §§ 24.16, 24.17.[19] An actor is subject to liability under a state dilution statute if, as a designation to identify its own goods, services, or business, the actor "uses a designation that resembles the highly distinctive[20] ... mark of another in a manner likely to cause a reduction in the distinctiveness of the other's mark," or "tarnishes" the images associated with the other's mark. Restatement § 25(1) (emphasis added). The Restatement provides:
A number of factors are relevant to whether a mark has acquired sufficient distinctiveness to be protected from dilution, including the inherent distinctiveness and uniqueness of the mark, the duration and extent of its use, the duration and extent of advertising that emphasizes the mark, and the degree of recognition by prospective purchasers. Third party uses of the mark either as a trade symbol or in other contexts also is an important factor in assessing distinctiveness. Concurrent use by other firms makes it unlikely that consumers will form a single mental association with the mark.
There is nothing in the requirement that the mark be highly distinctive that necessarily limits dilution protection to coined or fanciful marks. It is possible that an arbitrary mark, or even a mark that was originally descriptive but that has acquired secondary meaning, may by extensive advertising and long and exclusive use acquire a sufficiently high degree of distinctiveness to justify protection against dilution. However, this will rarely be the case because competitors and others remain entitled to use such words in their primary, lexicographic sense, and this permissible alternative use makes it unlikely that consumers will associate the designation exclusively with the trademark owner.
*471 Id., cmt. e. We adopt these principles expressed in the Restatement as appropriate for resolution of a dilution action in Florida.
For the judge's findings on one or both of these factors to be upheld, they must be supported by competent, substantial evidence in the record.[21] The trial judge found that a violation of section 495.151 occurred. He based his conclusion in part upon a finding that the name FIRST SOUTHERN BANK "is not a descriptive, geographic or generic name." Because we find as a matter of law that the name is merely descriptive, and therefore lacks the "distinctive quality" that the dilution statute is designed to protect, there is no possibility of a violation of section 495.151 unless a "distinctive quality" has arisen because the name has acquired a secondary meaning. Accordingly, we remand to the trial judge for a determination whether a secondary meaning has developed, and if so, whether dilution within the meaning described above has occurred.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Dilution is discussed infra.
[2] See also Junior Food Stores of W. Fla., Inc. v. Jr. Food Stores, Inc., 226 So.2d 393, 397 (Fla. 1969) (denying injunction of trade name use, noting that mere confusion shown by postal, sales, and delivery persons is not sufficient for injunction. "The test is satisfied when it is shown by one seeking injunctive relief that, because of a similarity of tradenames, potential customers of the first appropriator of a tradename actually do business with a second appropriator under the mistaken impression that they are doing business with the first appropriator."); Williamson v. Answer Phone of Jacksonville, Inc., 118 So.2d 248, 251-52 (Fla. 1st DCA 1960) (recognizing that descriptive and generic words generally cannot be exclusively appropriated, and that where "intent to defraud the public" is alleged, a cause of action is stated); cf. Richard Store Co. v. Richard's Warehouse Sales & Auction Gallery, Inc., 63 So.2d 502, 502 (Fla. 1953) (granting injunction where name "deceives the public and leads it to believe that the two corporations are the same").
[3] 15 U.S.C. §§ 1051-1127 (1991).
[4] Section 495.181, Florida Statutes (1991), provides: "It is the intent of the Legislature that, in construing this chapter, due consideration and great weight be given to the interpretations of the federal courts relating to comparable provisions of the Trademark Act of 1946, as amended (15 U.S.C. § 1051 et seq.) [the Lanham Act]." Section 495.181 became effective on October 1, 1990, after the commencement of the alleged infringement in this case. See ch. 90-222, § 8, Laws of Fla.
[5] Because a trade name or commercial name identifies a business rather than a product or service, it cannot be registered under the Act. See 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 9.06 (3d ed. 1992) [hereinafter McCarthy]. Names nevertheless can be protected against infringement, based on likelihood of confusion. See 15 U.S.C. § 1125 (a). Confusion regarding bank names is resolved under the Act, common law, and state laws. McCarthy, § 9.03[3].
[6] The distinctiveness of a mark is also referred to as its strength. See Restatement (Third) of Unfair Competition § 21, cmt. i (Tent. Draft No. 2, 1990) [hereinafter Restatement] ("The distinctiveness or `strength' of a mark measures its capacity to indicate the origin of the goods... . [T]rademarks that are fanciful or arbitrary are more distinctive than those that are suggestive, and suggestive marks are more distinctive that those that are descriptive, [or] geographically descriptive... .").
[7] Section 1052 provides in part: "No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration ... unless it [is] merely descriptive [or is] primarily geographically descriptive... ."
[8] See also Restatement § 13, cmts. b, c.
[9] See also Restatement § 13, comment c ("designation consisting of a word whose lexicographic meaning has no apparent application to the particular product or business with which it is used, such as SHELL used on petroleum products, is ... inherently distinctive. Prospective purchasers are likely to perceive [this] designation as a symbol of identification.")
[10] Professor McCarthy explains why the "suggestive" category arose:

The descriptive-suggestive distinction arose primarily because the common law recognized technical trademark rights only in fanciful or arbitrary marks. The protection of descriptive terms with secondary meaning was given under what was regarded as a separate body of law  unfair competition  which was only gradually accepted later in time. Judges, straining to find technical trademark infringement, had to have some label for marks that were not merely descriptive, but on the other hand, were not purely arbitrary or fanciful. Thus, the use of the term "suggestive" arose. Another reason prompting use of the "suggestive" categorization was the fact that the 1905 federal Trademark Act altogether forbid [sic] the registration of a mark that was merely descriptive of the goods or their quality or character. That is, the 1905 federal Act, unlike that 1946 Lanham Act, forbade the registration of descriptive marks regardless of proof of secondary meaning. When faced with marks that were on the borderline between the descriptive and arbitrary categories, the courts strained to uphold registrability by using the term "suggestive."
McCarthy, § 11.20[2] (footnotes omitted).
[11] See also Restatement § 14 cmt. b.
[12] See also Restatement § 15, cmt. a ("Generic designations are not subject to appropriation as trademarks at common law and are ineligible for registration under state and federal trademark statutes.").
[13] We note that these definitions are consistent with the Restatement. Restatement §§ 13-15.
[14] 2 McCarthy, 24.06[4].
[15] See also Restatement §§ 20-23.
[16] § 495.021, Fla. Stat. (1989). See 2 McCarthy on Trademarks § 23.24[1][b] (the Lanham Act test of registration is the same as infringement: likelihood of confusion).
[17] § 495.131, Fla. Stat. (1989).
[18] Section 495.151, Florida Statutes (1989), provides:

Every person, association, or union of workingmen adopting and using a mark, trade name, label or form of advertisement may proceed by suit, and all courts having jurisdiction thereof shall grant injunctions, to enjoin subsequent use by another of the same or any similar mark, trade name, label or form of advertisement if it appears to the court that there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark, trade name, label or form of advertisement of the prior user, notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services.
[19] See also Restatement § 25.
[20] "Highly distinctive" is explained: "The cause of action for dilution protects the selling power of the mark... . To possess the selling power protected by the anti-dilution statutes, the mark must have a degree of distinctiveness beyond that needed for the designation to function as a valid trademark." Restatement § 25, cmt. e. A trademark is sufficiently distinctive to be diluted by a nonconfusing use "if the mark retains its source significance when encountered outside the context of the goods or services with which it is used by the trademark owner." Id. The Restatement commentators note that "the trademark KODAK evokes an association with the cameras sold under that mark whether the word is displayed with the cameras or used in the abstract." Id.
[21] We hold that the question is a mixed one of law and fact. Cf. Restatement (Third) of Unfair Competition § 21 (Tent. Draft No. 3, 1991) (discussion of the fact-law question in the context of the determination of likelihood of confusion in infringement actions, and recommending that the substantive significance of terms like "distinctiveness" is a legal question, while likelihood of confusion is a factual one). The Restatement, as yet, takes no position on the fact-law question in the context of dilution actions, despite a tentative draft of the restatement of the law as recently as March 1993. Restatement (Third) of Unfair Competition (Tent. Draft No. 4, 1993).