ROTHENBERG, J.
On December 23, 2008, the Upper Keys Business Group (“UKBG”) filed suit in Monroe County Circuit Court against Peter Anderson (“Anderson”) and the Monroe County Tourism and Development Council (“the Council”) seeking declaratory and injunctive relief. UKBG sought to enjoin Anderson from interfering with its planned festival celebrating the satirical 1982 “secession” of the Florida Keys from the United States, which UKBG was marketing under the name “Conch Republic Days: Northernmost Territories.” Anderson counterclaimed with an unfair competition claim and for dilution against UKBG and Howard Kolbenheyer (“Kol-benheyer”), the chair of UKBG, alleging that the name under which UKBG chose to promote and market its festival infringed on and diluted the festival he has coordinated, marketed, publicized, and held since 1990 under the name “Conch Republic In *1167 dependence Celebration.” Anderson claims a common law service mark interest and sought to enjoin UKBG and Kolben-heyer from promoting their festival under the name “Conch Republic Days': Northernmost Territories.” The trial court granted summary judgment in favor of UKBG and Kolbenheyer. For the reasons that follow, we reverse.

TRADEMARKS/SERVICE MARKS

A service mark is any “word, name, symbol, or device, or any combination thereof’ used by any person or entity “to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown.” 15 U.S.C. § 1127 (2006). A trademark is identical to a service mark except it relates to goods rather than services. Restatement (Third) of Unfair Competition § 9, cmt. f (1994).
Anderson’s unfair competition claim is premised on common law and state and federal statutes, which all apply the same standards. The federal Lanham Act (“Act”) provides protection against the confusing use of corporate names. Great S. Bank v. First S. Bank, 625 So.2d 463, 467 (Fla.1993); see also 15 U.S.C. § 1114(1)(a) (providing civil liability for the use of another’s mark that is likely to cause confusion, mistake or deceit). Thus, to establish a claim of trademark or service mark infringement, Anderson was required to show that: (1) he owns a valid, protectable trademark (service mark); and (2)there is a likelihood of confusion caused by UKBG’s use of his mark. Gulf Coast Commercial Corp. v. Gordon River Hotel Assocs., No. 2:05-cv-564-FtM-33SPC, 2006 WL 1382072, at *4 (M.D.Fla. May 18, 2006); see also § 495.181, Fla. Stat. (2008) (“The intent of this chapter is to provide a system of state trademark registration and protection substantially consistent with the federal system of trademark registration and protection under the Trademark Act of 1946, as amended.”); Gen. Conference Corp. of Seventh Day Adventists v. Perez, 97 F.Supp.2d 1154, 1157 (S.D.Fla.2000) (noting that 15 U.S.C. § 1114(1) of the Act provides that in a trademark infringement action, the plaintiff establishes a prima facie case if he shows that the mark is valid and the defendant’s use of his mark is likely to cause confusion).
To pursue a cause of action for injunc-tive relief based on unfair competition due to a tradename or trademark infringement, Anderson was required to prove the following:
(1) [He] first adopted and used a certain name (or mark ...) in a certain market or trade area, as a means of establishing good will and reputation and to describe, identify or denominate particular services rendered or offered by [him] ... and to distinguish them from similar services rendered or offered ... by others, and
(2) through [his] association with such services or goods [his] tradename (or mark, etc.) has acquired a special significance as the name of the services rendered ... by [him] in [his] trade area because [his] tradename (or mark, etc.)
(a) is inherently distinctive (fanciful, novel or arbitrary), or
(b) while ... descriptive, or geographic, [his] tradename (or mark, etc.) has, by actual usage, acquired in a certain trade area, a secondary, special or trade meaning as indicating, describing, identifying or denominating [him] as the source of certain services ... and
(3) [UKBG] has commenced, or intends to commence, the use of an identical or confusingly similar tradename (or mark, etc.) to indicate or identify similar ser *1168 vices rendered ... by it in competition with [him] in the same trade area in which [he] has already established [his] tradename (or mark, etc.) and (4) as a consequence of [UKBG’s] action, or threatened action, customer confusion of source or as to the sponsorship of the services ... offered, or to be offered, by [UKBG] is probable (likely) or inevitable.
Am. Bank of Merritt Island v. First Am. Bank & Trust, 455 So.2d 443, 445-46 (Fla. 5th DCA 1984) (footnotes and citations omitted).
The first two elements- — primacy and distinctiveness — establish the validity of the mark; whereas the last two elements establish the likelihood of confusion. Primacy is self explanatory. The distinctiveness of the mark refers to “how easily customers identify petitioner’s mark with the represented services.” Coach House Rest, Inc. v. Coach & Six Rests., Inc., 934 F.2d 1551, 1559 (11th Cir.1991).
When determining whether a mark is distinctive, the mark must be classified as either: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful. Gulf Coast, 2006 WL 1382072 at *4 (citing Investacorp, Inc. v. Arabian Inv. Banking Corp., 931 F.2d 1519, 1522 (11th Cir.1991)). As will be first discussed, generic marks are afforded no protection. The three remaining marks will then be addressed in the order of them strength, beginning with the strongest and ending with the weakest.

DISTINCTIVENESS

A. Generic Marks
A generic mark suggests the nature of the service but is silent as to its source, Gulf Coast, 2006 WL 1382072 at *5, and is typically incapable of achieving service mark protection because it lacks distinctiveness. Investacorp, Inc., 931 F.2d at 1522. Whereas a trademark identifies the source of a product, generic terms are commonly used words to name a kind of goods or a particular service. Great S. Bank, 625 So.2d at 469 (citing J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition 12.01[1], [2] (3d ed. 1992)). For example, using the term “Milk Delivery” for a milk delivery service is a generic mark because the commonly used words suggest the nature of the service, but are silent as to their source. Investacorp, Inc., 931 F.2d at 1522. Thus, generic names are free for all to use and if the mark is generic, it is not protected under trademark law and the inquiry ends. Gulf Coast, 2006 WL 1382072 at *5.
B. Fanciful or Arbitrary Marks
The Florida Supreme Court explains that:
“Fanciful” marks consist of “coined” words that have been invented or selected for the sole purpose of functioning as a trademark. Such marks comprise words that are either totally unknown in the language or are completely out of common usage at the time, as with obsolete or scientific terms....
If, in the process of selecting a new mark, a seller sits down and invents a totally new and unique combination of letters or symbols that results in a mark that has no prior use in the language, then the result is a “coined” or “fanciful” mark.
Great S. Bank, 625 So.2d at 467. Examples of fanciful marks are: KODAK, POLAROID, and XEROX. Id.
“Arbitrary” marks use common words but have no relationship to the goods or services being offered, such as IVORY soap (which is not made of ivory), APPLE computers, and ROYAL baking *1169 powder. Id. Fanciful and arbitrary marks are inherently distinctive, and therefore do not require proof of secondary meaning.[1] Gulf Coast, 2006 WL 1382072 at *4.
C. Suggestive Marks
“Suggestive” marks suggest the characteristics of the service or product and require the customer to employ some degree of imagination. Great S. Bank, 625 So.2d at 468. The examples provided by the Florida Supreme Court are: COPPERTONE (for sun tan oil), HEARTWISE (for low-fat foods), and GOBBLE GOBBLE (for processed turkey meat). Id. As with fanciful and arbitrary marks, suggestive marks are inherently distinctive and therefore do not require secondary meaning. Gulf Coast, 2006 WL 1382072 at *4.
D. Descriptive Marks
“A mark is ‘descriptive’ if it is descriptive of: the intended purpose, function or use of the goods, the size of the goods, the class of users of the goods, a desirable characteristic of the goods, or the end effect upon the user.” Great S. Bank, 625 So.2d at 468. Descriptive marks may be simply descriptive, lauda-torily descriptive or geographically descriptive. Id. Laudatory descriptive marks are “puffing” marks such as “Friendly,” “Dependable,” “Great,” “First,” and “Preferred.” Id. Geographically descriptive marks designate the geographical location of the origin of the goods and services. Id. Examples of geographically descriptive marks are “Bank of Texas” and “Inn on Fifth.” Gulf Coast, 2006 WL 1382072 at *5.
If a descriptive mark is inherently distinctive, it will be afforded legal protection without further proof. If a descriptive mark is not inherently distinctive, it will only be protected if it has become distinctive. “This acquisition of distinctiveness is referred to as ‘secondary meaning.’ ” Bank of Tex. v. Commerce Sw. Inc., 741 F.2d 785, 787 (5th Cir.1984). An example of an inherently distinctive descriptive mark immediately capable of protection without establishing a secondary purpose is “Sue’s Novelty Shop on Worth Avenue.” The mark identifies the source, location, and the goods offered. The name is not only descriptive of the services or goods offered and of the location of the establishment, it identifies the source of the services. Thus, the combination of the terms establishes a unique or distinctive descriptive mark.
Descriptive marks that are not inherently distinctive require proof of a secondary meaning. “Secondary meaning is the connection in the consumer’s mind between the mark and the provider of the service.” Coach House Rest., Inc., 934 F.2d at 1560; see also Gen. Conference Corp., 97 F.Supp.2d at 1158 (“To establish secondary meaning, the owner of the mark must show that, in the minds of the public, the primary significance of a term is to identify the source of the product rather than the product itself.”); Bank of Tex., 741 F.2d at 787 (holding that “a plaintiff must show that the primary significance of the term in the mind of the consuming public is not the product but the producer”). The factors to consider in determining whether a name or mark has acquired secondary meaning are: (1) the length and manner of the mark’s use; (2) the nature and extent of advertising and promotion *1170 for the plaintiffs business; (3) the efforts made by the plaintiff to promote a conscious connection in the public’s mind between the mark and the plaintiffs business; and (4) the extent to which the public actually identifies the name with the plaintiffs service. Coach House Rest, Inc., 934 F.2d at 1560.
The burden necessary to establish secondary meaning is substantial. Bank of Texas, 741 F.2d at 787; see also Vision Ctr. v. Opticks, Inc., 596 F.2d 111, 118 (5th Cir.1979) (“[A] high degree of proof is necessary to establish secondary meaning for a descriptive term.”). And when a party is seeking a preliminary injunction, the movant must clearly establish a substantial likelihood it will succeed on the merits.
Given the extraordinary nature of the remedy, the courts require a movant to carry its overall burden clearly. Of course, that means that the movant must convince the Court, not that it might succeed, or could possibly succeed; rather, the movant must clearly convince the Court that they are substantially likely to succeed.
Gulf Coast, 2006 WL 1382072 at *8 (emphasis omitted).
The more distinctive the mark, the stronger it is. Thus, the strength and distinctiveness of the mark is a vital consideration in determining the scope of protection it should be accorded. Id. at *6. “A strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties.” Id. (quoting John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 973 (11th Cir.1983)).
The examples of descriptive marks previously cited by this Court, “Bank of Texas” and “Inn on Fifth,” were both found to contain common formative components that had been widely used by third parties, and thus relatively weak in their descriptiveness. Id. at *7. After examining the evidence to determine whether these marks had acquired secondary meaning, it was determined that neither were entitled to protection. Bank of Tex., 741 F.2d at 790; Gulf Coast, 2006 WL 1382072 at *13.
Thus, the most distinctive marks are fanciful, arbitrary, and suggestive marks. Because they are inherently distinctive, they require no proof of a secondary meaning. Descriptive marks, however, may or may not be inherently distinctive, and if they are not, secondary meaning is required. Generic marks are incapable of acquiring distinctiveness and are not protected by the Act. In other words, if a mark is generic it cannot obtain protection by establishing secondary meaning. A name may also be comprised of a combination of the various types of mark. When determining whether a compound mark is distinctive, one must examine it as a whole. Great S. Bank, 625 So.2d at 469 (concluding that the trial court erred “by failing to view the mark as a whole, as required”); Cebu Assoc. of Cal., Inc. v. Santo Nino de Cebu, USA, Inc., 95 Cal.App.3d 129, 157 Cal.Rptr. 102, 104 (1979) (“[A] mark composed of more than one word, must be considered in its totality.”).
If the first two elements are established — primacy and distinctiveness— then the validity of the mark is proven. However, to establish a claim of trademark or service mark infringement, Anderson was also required to show that there is a likelihood of confusion caused by UKBG’s use of his mark. Gen. Conference Corp., 97 F.Supp.2d at 1157; see also 15 U.S.C. § 1052(d) (providing that a trademark may be denied registration where it is likely to cause confusion).

*1171
INFRINGEMENT

Once the plaintiff in a trademark or service mark infringement action has made a prima facie case that its mark is valid, it must establish that the defendant’s use of his mark will likely cause confusion. The factors to be considered are:
(1) the degree of resemblance between the conflicting designations;
(2) the similarity of the marketing methods and channels of distribution;
(3) the characteristics of the prospective purchasers and the degree of care they exercise;
(4) the degree of distinctiveness of the senior user’s mark;
(5) where the goods or services are not competitive, the likelihood that prospective buyers would expect the senior user to expand into the field of the junior user;
(6) where the goods or services are sold in different territories, the extent to which the senior user’s designation is known in the junior user’s territory;
(7) the intent of the junior user; and
(8) evidence of actual confusion.
Great S. Bank, 625 So.2d at 469-70. To establish likelihood of confusion, all of these factors do not have to be resolved in favor of the plaintiff. Gen. Conference Corp., 97 F.Supp.2d at 1157; Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc., 675 F.2d 1160, 1167 (11th Cir.1982).

DILUTION

Anderson alleges unfair competition and dilution. He claims that UKBG’s festival infringes on and dilutes the festival he has coordinated, marketed, publicized, and held since 1990. “Dilution differs from infringement in that it does not necessarily depend on either competing goods or likelihood of confusion.” Great S. Bank, 625 So.2d at 470. A violation of Florida’s dilution statute, section 495.151, occurs where a designation resembles the highly distinctive mark of another in a manner likely to cause a reduction in the distinctiveness of the other’s mark or “tarnishes” the images associated with the other’s mark. Id. In making this determination, the court will look to the distinctiveness of the two services or products, the duration and extent of its use and advertising, and the degree of recognition by prospective purchasers. Id.

THE TRIAL COURT’S ORDER

The trial court found that the terms “Conch Republic” and “Independence Celebration” are “entirely generic; together, the words do not constitute a distinctive, defensible brand or mark; and the right to celebrate the satirical secession and declaration of independence of the Florida Keys as the Conch Republic belongs to no one man.” Additionally, the trial court concluded that the names of the two events— “Conch Republic Independence Celebration” and “Conch Republic Days, Northernmost Territories” — are distinctly different names referring to separate events in separate trade markets separated geographically by seventy or eighty miles at different ends of the Florida Keys. Thus, the trial court found there is no likelihood of consumer confusion as to the source or sponsorship of the two events.

LEGAL ANALYSIS

As already discussed, to pursue a cause of action for unfair competition due to a trademark or service mark infringement or dilution, Anderson must prove he owns a valid protectable trademark or service mark interest. Once he has met that threshold, he must establish either an in- *1172 fringeraent by proving a likelihood of confusion caused by UKBG’s use of his mark, or dilution of his mark by UKBG. To establish a valid protectable mark, Anderson must establish primacy and distinctiveness.
The trial court did not address the first required element, primacy, and instead granted summary judgment in favor of UKBG based on its finding that Anderson’s mark, “Conch Republic Independence Celebration,” was generic, and thus not a valid protectable trademark even if primacy could be established. This was error. Anderson’s mark is a descriptive mark. His mark identifies its purpose — to celebrate the satirical 1982 secession of the Florida Keys from the United States. See Great S. Bank, 625 So.2d at 468. It also designates the geographical location of the origin of the celebration— the Conch Republic, which is the name Key West’s former mayor, Dennis Ward, coined for the Florida Keys in 1982.
A descriptive mark is a weak mark, and unlike an arbitrary, fanciful, or suggestive mark, it is not immediately capable of protection unless it is inherently distinctive. Bank of Tex., 741 F.2d at 787. Descriptive marks that are not inherently distinctive, require proof of secondai'y meaning. Id. Anderson’s mark, “Conch Republic Independence Celebration,” is not inherently distinctive, thus he is required to establish secondary meaning. The record reflects that Anderson did submit evidence as to this element, but that evidence was not evaluated by the trial court because the trial court incorrectly found that Anderson’s mark was generic, and incapable of protection.
The trial court also did not address primacy. To establish a valid protectable mark, Anderson must not only prove distinctiveness by establishing secondary meaning because his mark is descriptive and not inherently distinctive, he must also prove that he established his trademark or service mark interest prior to UKBG or Kolbenheyer. Our review of the record reflects that the issue of primacy is an unresolved factually disputed issue.
On remand, if, and only if, Anderson establishes primacy and his mark acquires distinctiveness through secondary meaning, the trial court must then resolve whether Anderson has established either infringement based on the likelihood of confusion, Great S. Bank, 625 So.2d at 469, or dilution based on either: (1) a likelihood of injury to business reputation; or (2) dilution of the distinctive quality of the tradename. Id. at 470. If Anderson does not prove primacy and distinctiveness, then he does not have a valid protectable mark and no findings are required as to possible confusion or dilution.[2]
Accordingly, we reverse the trial court’s order finding Anderson’s service mark generic and granting summary judgment in favor of UKBG and Kolbenheyer, and we remand for further proceedings based on our conclusion that Anderson’s mark is descriptive, requiring secondary meaning and primacy to be protectable.
Reversed.
SALTER, J., concurs.

. Inherently distinctive marks are immediately capable of protection. Marks that are not inherendy distinctive require proof of secondary meaning, which will be described in detail under "Descriptive Marks.”

. The trial court incorrectly addressed the likelihood of confusion after finding that Anderson’s mark was generic and thus incapable of protection.